### FRENCH v. GAPEN.

### SPEARS v. GAPEN.

The legislation of the State of Indiana touching the water-power of the Wabash and Erie Canal, and the rights of certain parties thereto acquired under that legislation, considered. *Held*, 1. That the contractor who, pursuant to his bid under the act of Jan. 9, 1842 (*infra*, p. 510), performed the work, acquired, until he should be fully paid therefor, a property right in the rents of the water-power which he rendered available, and the State became a trustee to collect and pay them to him. 2. That by his contract (*infra*, p. 514) the mill-owner secured, without payment of rent, the right to draw water to his mill from the canal, as long as the latter yielded a surplus beyond the amount required for navigation and for furnishing the earlier leases. 3. That the title to the property, which the State conveyed to the board of trustees of the canal, was subject to the rights so acquired and secured. 4. That where, by a decree rendered in a suit whereto the board and the holder of the certificates of stock provided for in the conveyance of the State to the trustees were parties, the part of the canal to which those rights attached was sold and the fund brought into court, the contractor and the mill-owner can intervene in order that their respective rights, either upon the fund or against the purchaser, may be ascertained and determined.

APPEALS from the Circuit Court of the United States for the District of Indiana.

The facts are fully stated in the opinion of the court.

The cases were argued by *Mr. John Morris, Mr. Ralph Hill,* and *Mr. Samuel Shellabarger* for the appellants, and by *Mr. Solomon Claypool* and *Mr. R. S. Taylor* for the appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The State of Indiana constructed the Wabash and Erie Canal from La Fayette, on the Wabash River, through Delphi and Fort Wayne, to the Ohio State line. To meet the expense of this undertaking a large bonded debt was created, and secured in a general way by statutory provisions of a character similar to those contained in sect. 5 of an act of Jan. 9, 1832, authorizing the first issue of bonds, and which is as follows: —

"That for the payment of the interest, and the redemption of the principal of the sums of money which may be borrowed under the authority of the General Assembly, for the construction of said canal, to the extent of the estimated cost thereof, in the first section of this act stated, there shall be, and are hereby, irrevocably pledged and appropriated all the moneys in any manner arising from the lands donated by the United States to this State for the construction of said section of canal, the canal itself, with the said portion of land thereto appertaining, or as much thereof as will realize by sale the sum borrowed, and all privileges thereby created, and the rents and profits thereof belonging to the State, and the net proceeds of tolls collected on said canal, or any part thereof as finished; the sufficiency of which, for the purposes aforesaid, as above allowed and provided for, the State of Indiana doth hereby irrevocably guarantee." Acts 1832, p. 2.

From the beginning, the use of water for hydraulic purposes, when not needed for navigation, seems to have been contemplated, and ample provision was made by statute for acquiring the necessary land and effecting leases of power. With a view to this end, the following "Act relative to water-power at the town of Delphi" was passed and approved Jan. 9, 1842: —.

"SECT. 1. *Be it enacted by the General Assembly of the State of Indiana,* that it shall be the duty of the engineer, or other person having charge of the Wabash & Erie Canal, on or before the first day of May next, to let by contract, to the lowest bidder, the clearing out and removing all obstructions from the bayou which extends from the canal, at the said town, to the Wabash River, for the purpose of creating water-power upon the said canal at that place.

"SECT. 2. *Be it further enacted,* that said engineer or other person, before letting the said work, shall give public notice of the

terms, conditions, and also the time of the said letting, by publishing the same in the newspapers printed in the said county, for two months, at least, previous to the time of said letting: *Provided*, that the said works shall be finished within six months from the time of said letting.

"SECT. 3. *Be it further enacted*, that the said engineer, or person having charge of that part of the canal, shall cause the work to be estimated when the same is completed, and shall give to the person doing the same a draft or other evidence of indebtedness, specifying what the same was given for, and the amount due him as by the said contract, and for the purpose of paying for the said work, the rents that may be received by the State for water-power created by this act shall be appropriated for that purpose, and to no other purpose; and the person or persons doing the said work shall look to the said rents for their pay, and to no other source whatever; and as fast as the said rents may be due or received, they shall be expended in paying for the said work until the whole amount is paid.

"SECT. 4. *Be it further enacted*, that so soon as the said work is let to some responsible person, it shall be the duty of the said engineer, or other person, to lease out a portion of the water-power by this act created, not exceeding in all what would be sufficient to propel thirty run of stones, at the same prices and upon the same terms and conditions as water-power under similar advantages is leased at other places upon the said canal, and it is made the duty of the said engineer, or other person, before leasing the same, to give at least two months' notice of the time, terms, and conditions upon which the same will be leased, in the newspapers published in the said county.

"SECT. 5. *Be it further enacted*, that it shall be the duty of the said engineer, or other person, as the agent on behalf of the State, for the purpose of securing to the State the advantages by this act contemplated, to purchase of the owner or owners of land lying adjacent to the place where said water-power is to be located, such real estate, not exceeding in all four acres, as may be necessary to carry into effect the provisions of this act, at such reasonable prices as may be agreed upon by the said agent and the owner or owners thereof; and in case of disagreement at such prices as may be fixed by persons chosen by the said agent and the said owners: *Provided*, that in no case shall the prices paid by the State for such land exceed what has heretofore been paid for such property under the same or similar advantages, and for such real estate so purchased the said agent shall take a conveyance to the State by deed in fee-

simple: *And provided further,* that nothing in this act contained shall be so construed as to authorize any interference whatever with the navigation of said canal.

"SECT. 6. *Be it further enacted,* that this law shall be in force from and after its passage."

Under the authority of this act, James Spears and Reed Case entered into a contract with the State to do the work required upon the terms proposed, and before the 1st of December, 1843, had it all done. On the 19th of January, 1846, another act was passed, by which it was made the duty of the officer having charge of the canal east of Tippecanoe to settle as soon as possible with the contractors, and give them a certificate for the amount found their due, to be paid out of the rents derived from the power created by what had been done, and also providing that the certificate should draw interest from the time the contract was completed until paid.

The settlement contemplated by this act was effected on the 29th of September, 1847, and the following certificate issued: —

"DELPHI, Sep. 29, 1847.

"I hereby certify that Spears & Case have performed work to the value of $10,354\frac{20}{100}$ in cleaning out the bayou which extends from the canal at Delphi to the Wabash River, estimating according to the terms of a contract between said Spears & Case and S. Fisher, commissioner of the W. & E. Canal, dated May 1, 1842, made in pursuance of an act entitled 'An Act relative to water-power at the town of Delphi, in Carroll County, approved January 20, 1842.' And according to the provisions of an act entitled 'An Act authorizing a settlement with Spears & Case for work done on the side cut at Delphi, in Carroll County, approved January 19, 1846,' the said Spears & Case are entitled to receive interest on said sum until paid. And I certify also that said work was performed prior to the first day of December, 1843.

"S. FISHER,
"*Gen'l Sup't W. & E. Canal.*"

On the twenty-ninth day of May, 1846, the State leased to George Robertson, at an agreed rent, a sufficient amount of power made available by the work done by Spears & Case to propel three run of stone. Of this lease Enoch Rheinhart is the present assignee and owner. He still uses the water.

All the rents derived from this lease down to Nov. 1, 1875, have been paid and accounted for to Spears & Case.

In the construction of the canal it became necessary to take the water from the St. Joseph River, near Fort Wayne. In doing this the power which supplied certain mills that had been erected on that river by Henry Johns was taken away, and on the 11th of February, 1843, the following statute was passed for his relief : —

"AN ACT for the relief of Henry Johns.

"WHEREAS, Henry Johns, of the county of Allen, previous to the commencement of the Wabash & Erie Canal, was the owner of a valuable mill privilege or water-power on the St. Joseph River, and had erected valuable mills thereon ; and whereas, the State of Indiana did afterwards erect a feeder-dam, to supply with water the summit level of the Wabash and Erie Canal, above the mills erected by said Johns, on the St. Joseph River, thereby abstracting from the mills aforesaid about 5,000 cubic feet of water per minute, which, in low stages of water, is all the water contained in the said river St. Joseph, and renders wholly useless the mills erected by said Johns ; therefore —

"SECT. 1. Be it enacted by the General Assembly of the State of Indiana, that the commissioner of the Wabash and Erie Canal be, and is hereby, directed to cause to be supplied to the said Henry Johns, his heirs and assigns forever, from the Wabash and Erie Canal, at the town of Fort Wayne, in the county of Allen, on land now owned or to be purchased by said Johns, a sufficient quantity of water to propel three pair of burr millstones free of any toll or water-rent, and continue to supply the same for the use of said Johns, his heirs and assigns forever, at all times when the same shall not be needed to fill the contracts heretofore made with Samuel Edsall and Hamilton & Williams, or required for the purpose of navigating said canal : Provided, that the said Johns shall, for himself, his heirs and assigns, release to the State of Indiana all claims against the State for the abstraction of water from the St. Joseph River to supply the Wabash and Erie Canal, and shall also credit in full any or all awards or judgments that shall have been recovered by said Johns against the State for the abstraction of any water-power.

"SECT. 2. This act shall take effect and be in force from and after its passage."

In accordance with the provisions of this statute, and to carry it into effect, the following agreement was entered into between Johns and the State on the 6th of July, 1843 : —

" This agreement, made this sixth day of July, 1843, between the State of Indiana, party of the first part, by S. Fisher, commissioner of the Wabash and Erie Canal, thereto duly authorized by law, and Henry Johns, of the second part, witnesseth :

" That said party of the first part, in consideration of the covenants and releases hereinafter contained, and upon the express condition that the party of the second part shall at all times comply with all and singular the limitations and conditions hereinafter contained, and shall, in every respect, perform all the stipulations of the agreement by said party to be performed, agrees to lease to said party of the second part forever, subject to the restrictions, limitations, and conditions hereinafter contained, the use and occupation of so much of the surplus water (not required for purposes of navigation, or to fill the contracts heretofore made with Samuel Edsall and Hamilton & Williams), at the town of Fort Wayne, to be used on lot number nine (9) of the county addition to said town, as will be sufficient, when properly applied on an overshot wheel of sixteen feet diameter, with the proper gearing, to be approved by the commissioner of said canal, to propel three run of four-and-a-half-feet millstones, grinding at the rate of five bushels per hour each, to be applied to such manufacturing purposes as the said second party may choose. It is understood that the second party to this agreement is entitled to the same quantity of water, whenever there is a surplus in the canal as above, that Allen Hamilton and Jesse L. Williams are entitled to under the lease bearing date 29th of November, 1842. The water will be taken by a head-race from the canal, at the place above described, and after passing over the wheel will be conducted by a suitable tail-race, into the St. Mary's River. The flow of water to the wheel will be regulated and controlled by a permanent regulating weir, to be constructed in the most substantial manner, with stone side and breast walls, agreeably to a plan to be furnished by the commissioner of the canal, to be built in every respect according to his directions, as not to endanger the safety of the canal in any manner whatever. And it is understood that the necessary regulating weir, head-race, and trunk to conduct the water to the wheel, and the tail-race to pass it from the wheel as above specified, are to be constructed by the party of the second part at his own expense and

according to the direction of the commissioner aforesaid, and to be kept in good repair, so as to prevent the waste of water; and if at any time during the continuance of this lease any breach or other injury shall occur to the canal in consequence of the race or trunk not being faithfully constructed, or being suffered to be out of repair, or from any negligence of any person employed about the mills, then the said party of the second part shall forfeit and pay to the State the whole cost of repairing such breach or injury; and if the said party of the second part shall refuse or neglect to rebuild, repair, or strengthen said regulating weir or other works necessary to the security of the canal, after being notified in writing by the commissioner, superintendent, or other proper agent of the State that such removal is necessary for the safety of the canal, such refusal or neglect shall subject the party of the second part to a forfeiture of this contract or lease at the option of the commissioner or other agent of the State thereto duly authorized.

"It is expressly understood by the parties hereunto that the first party does not agree to furnish water to the second party except at such times as there is a surplus over and above what is required for purposes of navigation and to supply existing contracts with Samuel Edsall and Hamilton & Williams. And the right is also reserved by the first party to draw the water from the canal whenever it may be necessary to repair or prevent breaches, take out bars, or make any repairs whatever.

"And the second party, for and in consideration of the right to the use and occupation of said water, agrees to release, and does hereby release, for himself, his heirs and assigns forever, all claim or claims against the State of Indiana for damages heretofore done or that may hereafter be done to any property now or heretofore owned by him, the said Henry Johns, in consequence of diverting water from the St. Joseph River to supply the Wabash and Erie Canal and the mills erected or to be erected thereon or supplied therefrom.

"And the said Henry Johns hereby releases to the State of Indiana all his right and title to the water flowing in the St. Joseph River whenever the same may be necessary for the supply of the canal and mills aforesaid.

"And the said Henry Johns acknowledges the foregoing lease as being in full payment for all awards of damages heretofore made and for all damages done or hereafter to be done by diverting the water as aforesaid.

"And it is understood by the parties hereto that the second

party is to pay no rent other than releasing the first party from the payment of damages as above; and this agreement is made in pursuance of and with a view to carry out an act of the legislature, entitled ' An Act for the relief of Henry Johns,' approved Feb. 11, 1843.

" In testimony whereof we, the parties to this agreement, have hereunto set our hands and seals the day and year first above written.

" S. Fisher,        [seal.]

*Com.* *W. & E. Canal.*

" Henry Johns.        [seal.]

·" Signed and sealed in presence of—

·" Alex. McCulloch."

All the rights conferred by this agreement or grant are now owned by French, Hanna, & Co.

The State having become embarrassed by reason of its large indebtedness, growing out of the construction of this canal and other public improvements, passed an act, on the 19th of January, 1846, to provide for the liquidation of the debt, by which new certificates of State stock were to be issued. One of these certificates, representing one half the debt, was to be provided for by taxation in the usual way, and the other, representing the other half, out of the lands, tolls, and revenues of the canal. As an instrument for carrying into effect the arrangement in respect to the half of the debt payable out of the tolls, &c., 'the board of trustees of the Wabash and Erie Canal was created and constituted a body corporate, to which, on the 30th of July, 1847, a conveyance was executed as provided for in sect. 8 of the act, which is as follows : —

" Sect. 8. So soon as said trustees shall have been elected or appointed as aforesaid, it shall be the duty of the governor, in the name and under the seal of the State, to execute and deliver to said trustees, by the corporate name of the board of trustees of the Wabash and Erie Canal, a deed or patent for the bed of the Wabash and Erie Canal, and its extensions, finished and to be finished, from the Ohio State line to Evansville, including its banks, margins, tow-paths, side-cuts, feeders, basins, right of way, locks, dams, water-power, and structures, and all materials provided or collected for its construction; and all the property, right, title, and interest of the State in and to the same, with all its appurtenances; and also all the

lands and lots (not sold or disposed of) heretofore given, granted, or donated by the general government to the State, to aid in the construction of said canal, or any part of it, or which may be hereafter acquired under or by reason of any existing grant, and all moneys due and to grow due, and remaining unpaid on account of any sale or sales heretofore made of any canal lands so donated, and all moneys due or to grow due on account of any existing leases of any water-power or other privilege on said canal, its side-cuts, feeders, basins, or other appurtenances ; said board of trustees to have, hold, possess, and enjoy the same as fully and absolutely as the State can or could do ; subject, nevertheless, to all existing rights and equities against the State on account of the same, or any part thereof, or liabilities of the State growing out of, or in relation thereto ; and the same to be held by said trustees in trust and security for the uses and purposes following, that is to say — "

It is unimportant in this case to notice the specifications in respect to the trust any further than to say that the trustees were given no power to sell the canals.

The trustees took possession under this conveyance, and on the 5th of July, 1852, executed to Spears, Case, and James P. Dugan a lease of water at Delphi equivalent to three mill-stone power, reserving a certain agreed rent. This lease is now owned and the power used by Abner H. Owen, and the trustees accounted to Spears & Case for all rents collected under its provisions down to Nov. 1, 1875.

On the 19th of November, 1874, Jonathan K. Gapen, a holder of certain of the certificates of stock provided for in the conveyance to the trustees, filed a bill in equity in the court below, against the trustees, in behalf of himself and the other holders of the same class of securities, setting forth, in substance, that by reason of the failure of revenues from the canal it was impossible to keep it in a condition for use ; that the trust was insolvent and the trust property rapidly falling into decay, and praying " that the pledge and appropriation recited in said stocks shall be effectuated and the said canal and its appurtenances and lands may be decreed to be sold in such manner and on such terms as the court may deem best for the interests of those entitled to share in the proceeds thereof, and so as to bring the highest price therefor, and so as to

vest title in the purchaser or purchasers thereof, with the right
and duty to impose, maintain, and operate the same and receive
and enjoy the future tolls and revenues thereof as fully in all
respects as the State might originally have done, and on such
sale being made and the proceeds brought into court, your ora-
tor prays that the said fund may be divided among himself
and all other holders of said canal stocks according as their
several ownerships, amounts, and priorities may be from time
to time established to the satisfaction of the court and so
decreed."

. To this suit neither Spears & Case, nor Johns, nor any one
representing their interests, was made a party. The trustees
of the canal were the only defendants, and on the 24th of
December, 1875, a decree was made "that the Wabash and
Erie Canal, including its banks, margins, tow-paths, side-cuts,
feeders, basins, rights of way, locks, dams, water-powers, and
structures, together with all its appurtenances; also all lands
and lots . . . belonging to the trust and vested in the trus-
tees of the Wabash and Erie Canal," be sold. Under this
decree all that part of the main line of the canal from the
western boundary of the city of Lafayette to the Ohio State
line was sold to William Fleming for $85,500. This sale was
confirmed on the 12th of February, 1877.

On the 7th of July, 1877, before any final distribution of
the proceeds of the sale had been made, Spears, for himself
and as surviving partner of the late firm of Spears & Case,
and the widow and children of Case, who had before that
time died, filed an intervening petition, called in the record a
cross-bill, in which they set forth their connection with the
water-power at Delphi, substantially as has been already
stated, and alleged that there was still due them from the
State, on the certificate which they held, the sum of $24,678.86.
They then averred that the purchasers of the canal had col-
lected the water-rents under the leases owned by Rheinhart
and Bowen that fell due after Nov. 1, 1875, and refused to ac-
count to them, and that there was sufficient surplus water in
the canal at Delphi to supply power for the stipulated amount
of thirty run of stone, which the trustees had declined to lease
previously to the sale.

The prayer of their petition is as follows : —

"That upon the final hearing of this cause the court will order, adjudge, and decree that the sum which shall be found to be due to the plaintiffs shall be paid by the said Samuel B. Gookins, as such receiver, out of the funds now in his hands ; or if the court shall be of opinion that the plaintiffs are not legally entitled to any relief hereinbefore prayed for, then they pray that it shall be ordered, adjudged, and decreed by the court that they be entitled to demand and receive from the said lessees and their assigns all sums of money due from them for the rent of the water-power, as aforesaid, or that may accrue from the first day of May, 1877 ; that a receiver be appointed to take charge of the said water-power, manage and control the same, and collect the rents therefrom, and apply the same to the payment of the claim of the plaintiffs until the same is fully paid, and that the said receiver shall be authorized and empowered to make such additional leases of the said water-power as can be safely done without interfering with the navigation of the said canal, but not to exceed thirty run of stone ; that the said purchasers and owners of the said canal from the city of Logansport to the city of Lafayette, as aforesaid, be required to keep and maintain the dam, lock, and canal in good condition ; to preserve and maintain said water-power at the said city of Delphi, and that the said receiver be required to compel the lessees of the said water-power to keep and perform the stipulations contained in the leases aforesaid, as to making of repairs of the said canal ; and for all other and further relief to which the plaintiffs are entitled by virtue of matters and things hereinbefore stated."

On the 15th of May, 1878, French, Hanna, & Co., as assignees of Johns, filed their intervening petition in the cause, also called in the record a cross-bill, in which they set forth the facts in relation to the power granted to Johns, substantially as has already been stated, and then averred as follows : —

"Your petitioners further show that, in expectation of the permanent enjoyment of said water-power, they have erected large and extensive woollen mills on said lot nine (9) in Fort Wayne, at a cost of $25,000, and for many years have been operating the same by means of said water-power on said

canal so granted to said Johns, and thence conveyed to them; that the part of said canal in Allen County, including that supplying said water-power, is still kept up by said purchasers. That said water-power is of great value to your petitioners, as was the grant made by said Johns on the river for the same; that the annual value of said water-power is at least $1,500, and the aggregate value of the same is not less than $25,000, and in the sale of said canal the water-power so granted to said Johns and now owned by petitioners added at least $20,000 to the price paid, and to the fund now in court. Your petitioners further show that by said sale so made of said canal property, of every nature and description, a large fund, to wit, $150,000, has been realized, and is now in the custody of this court, and that of said fund at least $50,000 has been derived from the sale of that part of said canal which is supplied with water only by the feeder constructed to divert the water, and from the water in fact diverted from the St. Joseph River above the mill of said Johns, as aforesaid, and which was so ceded by said Johns to the State, as aforesaid, and that of said $50,000 so realized, at least four-fifths was derived from the sale of the water-powers on said canal made by the water so diverted from the mill of said Johns and ceded to the State, as aforesaid, as the condition for the grant of said perpetual water-power to him; that said purchasers contend that said property was sold to them absolutely free and clear of all claims of your petitioners; while it is, on the other hand, pretended by the receiver and said trustees that your petitioners have no claim whatever on said funds, whereas your petitioners insist that, as they had a claim in the nature of a personal liability against said State, that the same was assumed by said trustees, and that their said claim was and is a charge not only on said fund, but that it also follows said property into whosesoever hands it passes."

The prayer of the petition is as follows: —

"But insomuch as there is great danger that, from the abandonment of said canal as a public highway, it may go to ruin, and your petitioners' claim upon the property itself become of little value, and by reason of your petitioners' manifest equity in the premises, and forasmuch as this large fund, so derived from the sale of said property, is now in the custody of this

court for distribution to all parties equitably interested therein, and forasmuch as all the parties, as well the purchasers as the original complainants and defendants herein, are still before the court for the settlement of all equities in the premises;

" Your petitioners pray that they have leave to file this their intervening petition; that said parties to this original suit, the said Samuel B. Gookins, as such receiver, and the said William Fleming, John H. Bass, Oscar A. Simons, James Lillie, George J. Bippus, and Robert Simonton, as purchasers, and each of them, be required to make full and true answer in the premises, and show, if they can, why your petitioners should not be paid out of said fund any damages which they may sustain by reason of the abandonment of said canal by the State and by said trustees, and why the estate of said purchasers in said property shall not be declared to be servient to that of your petitioners, and upon the hearing will your Honors grant to your petitioners all such relief as may be just, equitable, and proper."

In each of the petitions it was stated that Fleming, the original purchaser, had transferred a part of the property to others. All these purchasers, as well as Fleming, the trustees of the canal, Gapen, and Gookins, who in the progress of the cause had been appointed receiver, were named in the petitions as defendants, and they all appeared and filed demurrers. These demurrers were sustained below and the petitions dismissed. From the decrees to that effect the present appeals were taken.

The first questions to be settled relate to the rights of Spears & Case, Johns, and the trustees of the canal respectively, under their several contracts with the State.

1. As to Spears & Case.

To our minds it is clear that the effect of what was done with these parties was to convey to them a property right in the rents produced by leasing the water-power made available through their work, to continue until the compensation stipulated for was paid in full. The State assumed no pecuniary obligation in the contract that was made, and Spears & Case agreed to look only to the rents for their pay. To this end, the State "appropriated," that is to say, set apart, the rents for the use of Spears & Case, and made itself a trustee to col-

lect and pay them over as fast as received. No other reasonable construction can be given to the language of the statute on which the rights of the parties depend. In effect the State said to the contractors, " If you will do the work necessary to create the power, or, in other words, if you will make the water in the canal available for power at the place designated, you shall have the revenues which accrue from the use of the power so created and made available, until you are paid for your work at the agreed rate." The undertaking on the part of the State was not to pay out of a particular fund, but that the fund when raised should belong to the contractors. The debt was in reality not a charge against the State, but against the water-power. The language of this statute is even more explicit than that of the fifth section of the act of 1832, which this court held, in *Trustees of the Wabash & Erie Canal Co.* v. *Beers* (2 Black, 448), created, as security for the bonds that were issued, a lien on the canal, its lands and revenues, which could not be divested by any subsequent legislation. Here the very statute which authorized the creation of the power " appropriated " the revenue to be derived from the power primarily to the payment of the expense of its creation, and expressly provided that payment of such expense should not be made in any other way. Not only did the contractors agree to look alone to the rents for their compensation, but the State appropriated the rents to their use. The giving and taking operated, at least in equity, as a complete transfer.

Our conclusion then is, that from the time Spears & Case completed the work under their contract, the State held the water-power made available by what they had done to the extent of the amount required to propel thirty run of stone, in trust to lease on the terms and conditions specified, whenever it could be done without detriment to navigation, and pay over the rents as received to Spears & Case until their claim was satisfied. In fact the State never became the beneficial owner of the power that was created. From the time of its creation it belonged in equity to Spears & Case until their charge upon it was paid. The State held the legal title coupled with authority to make the contemplated leases, but this was to be for the use and benefit of Spears & Case so long as anything

remained due to them for what they had done. Such was the manifest intention of the parties, and that, in a court of equity, is enough. *Ketchum* v. *St. Louis*, 101 U. S. 306. It is no doubt true that Spears & Case in their contract assumed the risk of a loss of the power by the decay or destruction of the canal, and that the State was under no binding obligation to keep up the repairs so as to supply the power; but that is not the case presented by this demurrer, for it is expressly averred that the canal is still maintained, and that the water is being furnished to the different lessees under their respective leases. For all the purposes of the present appeal, we must take that averment as true. If the facts are otherwise, it may, perhaps, be shown in defence.

2. As to Johns and his assignees.

Here, we think, was an absolute grant, for a valuable consideration, by the State to Johns, of the right to draw water from the canal for the purpose and on the terms and conditions specified. It was not a grant of the lands on which the canal was built, but of the right to draw water from the canal to be used in lieu of that which had been taken away. Originally Johns took the power directly from the river to his mill. Under his grant he was allowed to draw it through the canal, subject to the limitations and restrictions provided for. The only substantial difference between his rights and those of the other lessees of power was, that they were to pay rent at stated periods for the water they used, while he was to draw without payment of rent, in consideration of his release of the damages he had sustained by the diversion of the water from the river to the canal. What he got was the grant of a right to enter on the canal and draw water therefrom to his mill whenever and so long as there was a surplus over what was wanted for navigation and the supply of the earlier leases. This was a property right, and the legitimate subject of grant. *De Witt* v. *Harvy*, 4 Gray (Mass.), 486. Johns could not, any more than Spears & Case, compel the State to keep the canal in repair so as to give him the water; but as long as the canal was maintained and the water furnished, he had the right to draw. In this petition, as in that of Spears & Case, it is expressly averred that the canal is still maintained and supplied with water.

3. As to the trustees of the canal.

By an express provision in the grant to the trustees their title was made subject to all existing rights and equities against the State on account of the property conveyed, or any part thereof, and to all liabilities of the State growing out of or in relation thereto. In other words, the State conveyed all its remaining interest in the canal, and the trustees took what they got, charged with the same trusts, and incumbered by the same liabilities that rested on it when the grant was made. It follows that whatever property rights Spears & Case or Johns had in the canal before the grant, they retained after it. All that the State was bound to do in respect to them before, the trustees must do afterwards. As the State was the trustee of the power at Delphi for the benefit of Spears & Case when the transfer was made, the trustees took the title, subject to the same trust, and became bound in respect to its management in the same way and to the same extent the State had been until that time. Rents collected after the transfer were as much the property of Spears & Case, in the hands of the trustees, as they were in the hands of the State. So, too, in respect to Johns. Whatever water he could draw from the canal before the transfer he was entitled to draw afterwards. All that the State could be required to do for his benefit at the time of the transfer, the trustees were bound to do while they held the property. The obligations of the trustees in respect to both these parties were precisely the same as those of the State; no more and no less.

It only remains to consider whether the petitioners are entitled to relief in this suit and under the form of proceeding they have adopted.

They were not originally parties to the suit. No sale of the trust property could be made in their absence which would dispose of their rights. All that could pass under such a sale would be that which was conveyed by the State to the trustees; to wit, the canal, &c., subject to the prior rights of the petitioners. No decree binding on the petitioners could be rendered, defining what their rights actually were. A purchaser would take only what the trustees held, and be left to settle with the petitioners as best he could.

But while the petitioners were not in fact parties, they might with propriety have been made such, and there cannot be a doubt that if they had intervened before the decree of sale, and asked to be made defendants, it would have been within the power of the court, with the consent of the complainants, to take them in. The case did go on without them, presumably because it nowhere appeared until their intervention that there were any such outstanding rights as they claim. The decree, as entered, is broad enough on its face to authorize a sale of the property free of all incumbrances. The purchasers, acting on the idea that they bought all the water-power in the canal, and that the rights of the several petitioners had been extinguished, claim the rents under the Delphi leases as their own, and threaten to cut off the supply of water to the assignees of Johns unless rent is paid for what is used. In this condition of things, and while the purchase-money was under the control of the court, the petitioners intervened and asked to have their rights in the premises determined before any final distribution of the money was made. To their intervention no exception is taken by any of the parties. They are, therefore, to all intents and purposes, now to be treated as though they had originally been made defendants and set up their demands. It seems to us eminently proper that before the money paid under the sale is put beyond the control of the court it should be determined what, under the new developments, the rights of the several parties in respect to the property in question really are. From what appears, it is clear that the court expected to sell, and the purchasers supposed they were buying, the whole property free of all incumbrances. If that be so, the money in the hands of the court may not, perhaps, improperly be treated as representing what it was supposed would pass by the sale, rather than what actually did pass as the parties stood when the decree was entered. The petitioners, in their intervening petitions, state in terms their willingness to treat the sale as binding on them, if they can be paid from the proceeds what in equity represents the value of their interest in the property sold. As the case now stands, we see no reason why this may not be done. But we have only part of the record in the original suit here, and it may be that under

all the circumstances such relief would not be just to the complainants. In that event, it may be proper for the court to consider whether the facts connected with the sale were such as to make it inequitable to hold the purchasers to their purchase subject to the rights of the petitioners, in case they shall elect not to be bound.

Without deciding what upon the final hearing should be the form of relief afforded the petitioners, we are clearly of opinion that upon the facts stated in their petitions they are entitled to have their rights in the premises ascertained and something done in their behalf. The prayer of the petition of Spears & Case is for alternative relief. If it shall be determined that their interest in the property passes by the sale, they ask to be paid its value from the proceeds. If it does not, then they seek to have their rights, as against the purchasers, specifically ascertained and determined; the rents which have accrued and which may hereafter accrue from the Delphi leases paid over to them, and the proper steps taken to make the unused power at that point available for the liquidation of what is still due on their certificate. French, Hanna, & Co., the assignees of Johns, ask to be paid the value of the power which was granted to them, and for general relief. Under this prayer for general relief the court will be authorized to establish their right to the use of the water as granted, free of rent, in case it shall be determined they are not entitled to be paid the value of their power from the proceeds of the sale.

Without pursuing the inquiry further, we conclude the court was wrong in sustaining the demurrers and dismissing the petitions. The decrees dismissing the petitions will, therefore, be reversed, and the causes remanded with instructions to overrule the demurrers and proceed thereafter as justice may require, and in accordance with this opinion; and it is

*So ordered.*

MR. JUSTICE GRAY did not sit in these cases, nor take any part in deciding them.