SWIFT v. BLACK PANTHER OIL & GAS CO.

(Circuit Court of Appeals, Eighth Circuit.    March 30, 1917.)

No. 4749.

1. COURTS ⬥508(1)—FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN STATE COURT.

In a case in which a federal court first obtains jurisdiction of the subject-matter in controversy, and where it acts in aid of its own jurisdiction, to render its orders or decrees, or the title or disposition under them of the property within that jurisdiction effectual, it may, notwithstanding Rev. St. § 720, now Judicial Code (Act March 3, 1911, c. 231) § 265, 36 Stat. 1162 (Comp. St. 1916, § 1242), enjoin or restrain all proceedings in the state court which would have the effect of defeating or impairing its jurisdiction, or the orders, decrees, or titles it has made or is making in the exercise thereof.

2. COURTS ⬥508(3)—FEDERAL COURTS—INJUNCTION AGAINST PROCEEDINGS IN STATE COURT.

In a suit in a federal court by the United States to set aside a patent to an Indian allottee for land on which his heirs had executed separate oil and gas leases, by consent of all parties a receiver was appointed and authorized to enter into a contract with the lessee, by which it was to pay over to the receiver the royalties under the leases and retain as its own the remainder or working share of the oil and gas produced, free from any further claim thereto. Afterward one of the heirs, who was a party to the suit, sold and assigned his interest under his lease, and the assignee brought an action in a state court against the lessee and recovered a judgment for royalties, upon which he obtained an execution and injunction. Held, that the federal court not only had jurisdiction, but that it was its duty to protect the lessee in its rights under the contract by enjoining the enforcement of such judgment.

3. INJUNCTION ⬥148(1)—INJUNCTION BY FEDERAL COURT TO PROTECT JURISDICTION AND DECREES—SECURITY.

Act Oct. 15, 1914, c. 323, § 18, 38 Stat. 738 (Comp. St. 1916, § 1243b), is inapplicable to, and does not require security upon, the issue by a federal court of a restraining order or interlocutory order of injunction to prevent the impairment or defeat of the just exercise of its jurisdiction, or to protect and enforce its orders, judgments, or decrees, or titles and rights thereunder.

4. APPEAL AND ERROR ⬥87(3)—DECISIONS REVIEWABLE—INTERVENTION.

In intervention there are two classes of cases, one in which the intervention is not indispensable to the preservation or enforcement of the claim of the petitioner, and there the permission to intervene is discre-

tionary with the court. There is another class, in which the petitioner claims a lien upon or an interest in the specific property in the exclusive jurisdiction and subject to the exclusive disposition of a court, and his lien or interest therein can be established, preserved, or enforced in no other way than by the determination and action of that court. In this second class of cases, the petitioner has an absolute right to intervene in the proceeding, and permission for him to do so is not discretionary with the court, and its order refusing permission is reviewable by appeal.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against Bessie Wildcat and others. From an order granting an interlocutory injunction obtained by the Black Panther Oil & Gas Company, George M. Swift appeals. Affirmed.

Malcolm E. Rosser, of Muskogee, Okl. (J. R. Miller and T. R. Dean, both of Sapulpa, Okl., F. F. Lamb, of Okmulgee, Okl., Geo. S. Ramsey, of Muskogee, Okl., and Edgar A. De Meules, of Tulsa, Okl., on the brief), for appellant.

A. C. Cruce, of Oklahoma City, Okl. (C. B. Stuart, M. K. Cruce, J. R. Keaton, Frank Wells, and D. I. Johnston, all of Oklahoma City, Okl., on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

SANBORN, Circuit Judge. George M. Swift appeals to this court from an interlocutory decree of the United States District Court for the Eastern District of Oklahoma which enjoins him from enforcing—against the three-fourths working interest, or the proceeds thereof derived, or to be derived, during the receivership in the suit of United States v. Bessie Wildcat and others in that court by the Black Panther Oil & Gas Company, a corporation, hereafter called the Panther, from the operation for oil and gas on the northwest quarter of section 9, township 18 north, of range 7 east, in Creek county, Okl., under the lease thereof to the Panther made by the receiver by order of the federal court on April 20, 1914—the judgment or decree of the state district court of Creek county, Okl., in the suit of Swift, Trustee, v. Panther, rendered January 15, 1916, for Swift's recovery of the Panther out of the said three-fourths working interest of $113,330.56 and one-eighth of the oil derived from the land subsequent to December 15, 1915, either by writs of execution, or garnishments, or injunctions in or issued out of the state court.

Before the issue of the injunction of the federal court challenged, Mr. Swift, for the purpose of enforcing his decree, had caused the state court to issue a writ of execution, and had caused the sheriff to levy it upon and to advertise for sale thereunder the interest of the Panther in the land and in the oil and gas produced therefrom, had caused certain third parties to be garnisheed as creditors of the Panther, and had obtained an order from the state court on March 29, 1916, forbidding the Panther from paying out any money or doing anything of any kind that might prevent it from paying over all the money it then had, or might thereafter obtain, from any banks, or from the sale

of any oil or gas or other of its property, to the clerk of the state court, to apply upon Swift's judgment in case such court, or any other court, should subsequently order such judgment to be so paid. In this state of the case the Panther presented to the federal court in the Wildcat suit, to which it was a party defendant from its commencement, a petition for its injunction against Swift's interference by means of the execution, garnishments, or injunction of the state court with the ownership or disposition by the Panther of the three-fourths working interest in the oil and gas derived under the receiver's lease, or in the proceeds thereof, on the ground that Swift was estopped by the proceedings in the Wildcat suit, to which his assignor and predecessor in interest was a party before Swift obtained his claim, from in any way enforcing that claim against that three-fourths interest or any of the proceeds thereof. Swift answered the petition of the Panther, evidence was introduced by each of the parties, and after a full hearing the court sustained the position of the Panther and ordered the issue of its injunction.

[1] The first reason urged upon our attention by counsel for Mr. Swift for the reversal of the interlocutory decree of the federal court for the issuance of its injunction is that the national court had no jurisdiction to issue its injunction, because section 720 of the United States Revised Statutes, which is now section 265 of the Judicial Code, reads:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

In support of this contention counsel cite Diggs & Keith v. Wolcott, 4 Cranch, 179, 2 L. Ed. 587, Peck v. Jenness, 7 How. 612, 623, 624, 625, 12 L. Ed. 841, Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345, Whitney v. Wilder, 54 Fed. 554, 4 C. C. A. 510, and other cases of like character wherein the state court first acquired jurisdiction of the subject-matter in controversy. In cases of this class this act of Congress undoubtedly controls, and the federal courts may not interfere by injunction or otherwise with the proceedings of the state courts which have first acquired jurisdiction of the subject-matter. But it is equally true that in a case in which a federal court first obtains jurisdiction of the subject-matter in controversy, and where it acts in aid of its own jurisdiction to render its orders or decrees, or the title or disposition under them of the property within that jurisdiction, effectual, it may, notwithstanding section 720, Revised Statutes, now section 265 of the Judicial Code, enjoin or restrain all proceedings in the state court which would have the effect of defeating or impairing its jurisdiction, or the orders, decrees, or titles it has made or is making in the exercise thereof. Sharon v. Terry (C. C.) 36 Fed. 337; French v. Hay, 22 Wall. 250, note, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Julian v. Central Trust Company, 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629; Starr v. Chicago, Rock Island & P. Ry. Co. (C. C.) 110 Fed. 3, 6; Prout v. Starr, 188 U. S. 537, 23 Sup. Ct. 398, 47 L. Ed. 584; Lang v. Choc-

taw, Oklahoma & Gulf R. Co., 160 Fed. 355, 359, 360, 87 C. C. A. 307, 311, 312; Kansas City Gas Co. v. Kansas City (D. C.) 198 Fed. 500, 526; Guardian Trust Co. v Kansas City Southern Ry. Co., 171 Fed. 43, 49, 96 C. C. A. 285, 291, 28 L. R. A. (N. S.) 620; Western Union Tel. Co. v. U. S. & Mexican Trust Co., 221 Fed. 545, 553, 137 C. C. A. 113, 121; McKinney v. Landon, 209 Fed. 300, 305, 306, 126 C. C. A. 226, 231, 232. The law upon this subject has been repeatedly declared by the Supreme Court and by this court. In Lang v. Choctaw, Oklahoma & Gulf R. Co., 160 Fed. 359, 360, 87 C. C. A. 311, 312, the rule was thus stated by this court:

"The court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal. Farmers' Loan & Trust Company v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 44 L. Ed. 667; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Central Bank v. Stevens, 169 U. S. 432, 18 Sup. Ct. 403, 42 L. Ed. 807; Williams v. Neely, 67 C. C. A. 171, 185, 134 Fed. 1, 15, 69 L. R. A. 232; Barber Asphalt Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Gates v. Bucki, 53 Fed. 961, 969, 4 C. C. A. 116, 128, 129. * * * The jurisdiction of a court over a subject-matter or a cause once lawfully acquired includes the power to enforce its judgment or decree, and to protect the title of those holding under it from every attempt to avoid or annul it. Chicot Co. v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Julian v. Central Trust Company, 193 U. S. 93, 112, 24 Sup. Ct. 399, 48 L. Ed. 629; Wabash Railroad Company v. Adelbert College, 208 U. S. 38, 28 Sup. Ct. 182 [52 L. Ed. 379]; Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 949, 66 C. C. A. 55, 59, 67, 67 L. R. A. 761; Brun v. Mann, 80 C. C. A. 513, 151 Fed. 145 [12 L. R. A. (N. S.) 154]."

The foregoing rules are no longer debatable, and by them the injunctive order of the federal court must be tested. The exact subject-matter in controversy between the two courts is the three-fourths working interest in the oil and gas and in the proceeds of that interest derived and to be derived by the Panther, during the receivership in the federal court, from the land leased to the Panther by the receiver by order of that court on April 20, 1914, and the first question is: Which court first lawfully obtained jurisdiction of that subject-matter? The answer is found in the claims of the parties and the history of the proceedings in the two courts.

[2] Prior to May, 1903, the land here in question had been allotted and patented under the acts of Congress to Barney Thlocco, a Creek Indian. On November 1, 1913, the United States commenced a suit in equity against Bessie Wildcat, the Panther, Martha Jackson, a minor, Saber Jackson, as her guardian and next friend, and others, to avoid the allotment and patent to Thlocco, and to exclude the defendants in that suit from any right or title to the land and to the oil and gas that might be derived therefrom. The defendants Martha Jackson and her guardian, Saber Jackson, answered, and claimed that Thlocco died in 1904 intestate, that Annie Nevy was his sole heir, that Saber Jackson

married her, that Martha Jackson was their daughter, that Annie Jackson, formerly Annie Nevy, her mother, has also died, and that consequently Martha Jackson is the sole heir and the owner of the land, and Saber Jackson has a life estate in the land as tenant by the curtesy consummate. On November 13, 1913, Saber Jackson made an oil and gas lease of this land to J. Coody Johnson, whereby the lessee agreed, among other things, to pay to Jackson as rental one-eighth of all the oil and gas that should be produced and saved from the land. Johnson's interest under the lease was subsequently assigned to and became vested in the Panther on February 4, 1914. The Panther also became the lessee of Martha Jackson, by her guardian, Saber Jackson, under an oil and gas lease whereby it agreed to pay as rental to her one-eighth of all the oil and gas produced and saved from this same land.

On April 17, 1914, on the petition of the plaintiff in the Wildcat suit and some of the defendants therein, including Martha Jackson and Saber Jackson, as her guardian, and with the consent of all the other defendants, the federal court appointed a receiver to cause and direct the production of oil and gas from this land and ordered and directed him to make a formal agreement with the Panther for the development of the land and the production of oil and gas therefrom on the following terms, among others: That the Panther should deliver or pay to the receiver one-fourth of all the oil and gas produced from the land, that the Panther should give to the receiver for the benefit of the parties to the suit a satisfactory bond to perform the provisions of its agreement, that the receiver was—

"authorized and directed to release to the said Black Panther Oil & Gas Company, and its assigns, free from any claim of any party to this action, * * * the working interest in the oil and gas produced by the said company from the above described land, that is to say, all the oil and gas so produced in excess of the royalty portion of one-fourth of the gross amount of production."

Thereafter, pursuant to this order and direction of the court, the receiver and the Panther made a formal written agreement which embodied the terms specified in the order of the court, and thereunder the Panther has ever since been in possession of the property, producing or causing others to produce oil and gas from the land, and has been paying or delivering one-fourth thereof to the receiver or to his order.

On November 23, 1914, Saber Jackson, who had not theretofore been a party to the Wildcat suit, otherwise than as guardian for Martha Jackson, intervened in that case in his own behalf and filed his answer and cross-bill, wherein he set forth his claim to a life estate in the land as tenant by the curtesy,. and prayed that he be decreed to have such life estate and to have such further relief as might be just. His answer and cross-bill opened with these words:

"Comes now Saber Jackson, and by leave of court first obtained files this his answer and cross-bill in the above-entitled cause, hereby submitting to all of the orders, judgments, and proceedings heretofore had in said cause, as fully as though he had been made a party defendant herein from the institution of the suit."

On December 4, 1914, Saber Jackson assigned to George M. Swift all his rights to any oil and gas that had been or might be derived

from the land by virtue of his lease of November 13, 1913, to Johnson, to whose rights as lessee the Panther had succeeded in February, 1914. In February, 1915, Swift presented to the federal court a motion for leave to intervene as a defendant in the Wildcat suit and tendered his answer and cross-bill. In his motion and in his cross-bill he set forth the claim of Saber Jackson to an estate by the curtesy consummate in the land, Jackson's lease to Johnson and the assignment of the lessee therein to the Panther, and Jackson's assignment of his lessor's interest in that lease to him, Swift, and prayed, among other things, that he might be decreed to be the owner of the estate by the curtesy consummate in the land and of one-eighth of all the oil which had been or should be produced from the land by the Panther. On February 22, 1915, the federal court denied his motion for leave to intervene. Having been denied his right to present to the federal court his claim to the estate by the curtesy in the land and to one-eighth of the oil and gas extracted therefrom by his lessee, the Panther, Swift, on February 25, 1915, brought an action in the district court of Creek county, Okl., on his lease, against his lessee, the Panther, for the one-eighth of the oil and gas reserved to him by the lease, and this was the first time any action or proceeding relative to the subject-matters in controversy in the Wildcat suit appeared in the state court. The action in the state court resulted, on February 5, 1915, in its decree that Swift should recover $113,330.56 of the Panther on account of the rent reserved in the lease made by Saber Jackson, of which Swift was the lessor's, and the Panther was the lessee's, assignee, and for other relief, and it is from enforcing that decree by the application to it, by means of the writs of execution, the garnishments, and the injunctions of the state court, of the working three-fourths interest in the oil and gas, or the proceeds thereof assured to the Panther free from the claims of all the parties to the Wildcat suit by the order of the federal court of April 17, 1914, that the interlocutory decree of the federal court enjoined Swift.

The chronological statement of the proceedings in the two courts, which has now been made, demonstrates the fact that before any action or proceeding was commenced in the state court invoking its jurisdiction of any interest of any party in the Thlocco land, or in any of the oil or gas derived or to be derived therefrom, the federal court, by means of a suit in equity brought by the United States against the parties claiming interests in that land, and the oil and gas to be derived therefrom, had acquired full jurisdiction of the land, of the lease by Saber Jackson now held by Swift, and of the oil and gas produced and to be produced therefrom, had, with the consent of all the parties to that suit, appointed a receiver, who had taken possession of the property by his lessee, the Panther, had caused and directed its receiver to make, and that receiver had made, a written agreement with the Panther to the effect that it should produce oil and gas from the land and pay to the receiver, for the benefit of the parties to that suit, one-fourth of the oil and gas so to be produced and its proceeds, and that the Panther should retain and own three-fourths thereof called the working interest, free

from any claim of any party to the Wildcat suit; that after this agreement was made by order of the court, Saber Jackson, the lessor from whom Swift derives all his interest, had, before he assigned his lessor's interest in that lease to Swift, voluntarily intervened and become a party defendant in the Wildcat suit, and had thereby subjected himself, all his interest in the land, in the lease under which Swift claims, and in the oil and gas produced from the land by the Panther, to the previous orders and proceedings in the federal court, including that order whereby that court assured to the Panther the three-fourths working interest in the oil and gas produced and to be produced by it, free from any claim of any party to the Wildcat suit, in consideration of the Panther's agreement to pay and its continuing payment of one-fourth of the oil and gas it produced to the receiver for the benefit of those parties.

After all these proceedings, and still before the action was brought in the state court, Swift acquired from Saber Jackson, who was then a party defendant in the Wildcat suit, his lessor's interest in his lease to Johnson, while the latter's interest as lessee was vested in the Panther before the Panther received the receiver's lease. As Swift took his interest from Jackson after the latter had submitted himself to all the orders and proceedings in the Wildcat suit, and after Jackson had become a party to that suit, Swift took that interest with all the privileges and advantages, and subject to all the estoppels and disadvantages, under which Jackson himself held them; and as Jackson was estopped, by his submission to the previous orders of the court when he intervened, from denying or assailing the contract of the receiver and the court with the Panther, to the effect that the Panther should have and own the three-fourths working interest in the oil and gas free and clear of the claims of any of the defendants in the Wildcat suit, and that those defendants should look to the one-fourth interest in the oil and gas alone for their rental or royalty, so also was Swift, taking his interest pendente lite, bound by the same estoppel.

After that estoppel had become complete by virtue of the order and contract of the federal court with the Panther, and by the Panther's reliance and action upon them, Swift undertook to disregard it, and to collect the royalty or rental on his lease by his action in the state court out of the very three-fourths interest which his representative, the federal court, had assured to the Panther free from Swift's claim, in consideration that the Panther would pay one-fourth of the oil and gas it produced to the receiver for his benefit and for the benefit of the other parties to the Wildcat suit; and it was against his making this collection from that three-fourths by the use of the writ of execution, the garnishments, and the injunctions of the state court that the federal court issued the injunction from which this appeal was taken.

The unavoidable conclusion is that the federal court, long before Swift's action in the state court was commenced, acquired jurisdiction and possession of the Thlocco land and the leases thereof, of the oil and gas produced and to be produced from it by the Panther during the pendency of the Wildcat suit, and of the controversies

concerning all these matters; that it had plenary jurisdiction, notwithstanding the provisions of section 720, Revised Statutes, now section 265 of the Judicial Code, to enjoin or restrain Mr. Swift from using the writs of execution, the garnishments, or injunctions of the state court to defeat or impair the jurisdiction of the federal court, or the orders, decrees, or titles it has made, or shall decree or make, in that case; and that the first position of counsel for Mr. Swift in this case is untenable.

The next contention is that the injunction of the federal court against the enforcement by Swift of the judgment of the state court by its writs of execution, garnishments, and injunctions was unwarranted, because such enforcement will not deprive the federal court of the possession of the land, or prevent its receipt of the one-fourth of the oil and gas produced by the Panther under the lease made by the receiver. But the record convinces that the only property the Panther had or has had since the receiver's lease is its interest in this land, in the improvements thereon, and in the oil and gas produced therefrom under its leases from Martha Jackson, Saber Jackson, and the receiver, and the three-fourths working interest in the oil and gas and its proceeds assured to it by the order and agreement of the court made at the time of the receiver's appointment. To this three-fourths interest and its proceeds the court, the legal representative for this purpose of the defendant Saber Jackson, and of his successory lessor pendente lite, Swift, assured the title free and clear of their claims as lessors in consideration of the one-fourth of the oil and gas to be produced, which the Panther agreed to pay and pays to the receiver for the benefit of the parties to the Wildcat suit. The enforcement of the execution, the garnishments, or the injunction of the state court will necessarily impair or destroy the Panther's title to this three-fourths or to its proceeds, and apply some or all of them to the payment of the rent reserved in Jackson's lease which he assigned to Swift. But the court's order and contract with the Panther at the time of the appointment of the receiver limited the source, as against the Panther, from which any of the parties to the Wildcat suit and those claiming under them could collect rentals reserved in their leases of this land to the one-fourth of the oil and gas which the Panther agreed to pay and paid to the receiver for their benefit, and it unavoidably estops all the parties to that suit and Swift, claiming under one of them, from collecting or applying any of the three-fourths interest, or any of its proceeds, to the payment of those rentals.

The result is that the federal court not only had the jurisdiction and the power, but it was its duty by its injunction, to protect the title of the Panther to this three-fourths interest and to its proceeds, which that court had assured to it free from the claims of the parties to the Wildcat suit, and of Swift claiming under one of them, against the attempt of any of them, by subsequent proceedings in other courts, or otherwise, to evade the estoppel by which they were bound, or to impair or destroy the title of the Panther to the three-fourths interest in the oil and gas and its proceeds. Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546;

Julian v. Central Trust Company, 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629. The equities of the Panther were far superior to those of Swift, and they imposed upon the court below the judicial duty to make the order and decree challenged by this appeal.

The conclusions which have been stated were not reached without a deliberate consideration of the arguments of counsel and the authorities they cite to the effect that Saber Jackson's agreement to be bound by the prior proceedings in the Wildcat suit when he intervened was merely conventional, and did not estop him or Swift, claiming under him, from collecting of the Panther outside the Wildcat suit the rents reserved in Jackson's lease. On November 23, 1914, when Jackson made that intervention, he was the lessor in a lease of this land in which the Panther then was, and had been since February, 1914, the lessee. The Panther was then in possession of the land, producing oil and gas and paying one-fourth of it to the receiver for the benefit of the parties to the Wildcat suit, under the order and agreement of the court of April 17, 1914. That order and contract had been made with Jackson's consent as guardian of his daughter, Martha Jackson.

Counsel assert again and again that the order and agreement with the Panther, assuring to it the title to the three-fourths working interest free from the claims of the parties in the Wildcat suit, did not exempt that three-fourths interest, or its proceeds, from liability to levy and application to the payment of the debts of the Panther, and this is undoubtedly true as to all its creditors who were not parties to or bound by the proceedings in the Wildcat suit. It is conceded that before he intervened in that suit Jackson was at liberty to sue the Panther in any competent court for the rents reserved in his lease, and to collect them by the process of that court out of the three-fourths working interest received by the Panther under its lease from the receiver. But the Panther was in possession, producing oil from the land and paying one-fourth of it to the receiver of the court for the benefit of the parties to the Wildcat suit, under an order of the court the legal effect of which was to estop the parties to that suit from collecting out of the oil and gas produced by the Panther the rents reserved in their leases from any other source than from the one-fourth which the Panther agreed to pay for a title to the other three-fourths free from their claims.

Jackson, at the time he intervened, had the option to stay out of the Wildcat suit and collect his rent elsewhere, if he could, or to intervene, become a party to that suit, and pursue his just share of the one-fourth interest which was being collected therein for the benefit of the parties to that suit. He could not do both. The rental reserved in his lease was one-eighth of the oil and gas produced and saved. He could not become a party to that suit, thereby make himself a party to the order and agreement of the court that the source of his recovery of his rents reserved should be limited to his just share of the one-fourth the Panther was paying in consideration of its title exempt from the claims of the defendants in that suit to the other three-fourths, and at the same time recover his rents from the three-fourths. He exercised his option, intervened, and became a party

defendant in the Wildcat suit. The general rule is that the intervener is in the same situation, bound by the same orders, has the same right, and is subject to the same estoppels as though he had been a party from the commencement of the suit. French v. Gapen, 105 U. S. 509, 525, 26 L. Ed. 951; Rice v. Durham Water Co. (C. C.) 91 Fed. 433, 434.

When Jackson intervened he expressly declared in his answer and cross-bill that he submitted to all the orders, judgments, and proceedings theretofore had in the Wildcat suit as fully as though he had been a party defendant from the commencement of the suit. The order and contract of lease between the court and the Panther were a part of the proceedings theretofore had to which he submitted. Under these circumstances there is no persuasive reason why he, or his assignee, Swift, should be relieved from the general rule of equity practice, or from Jackson's express submission to the previous orders and proceedings in the Wildcat suit, while, on the other hand, equity and justice alike demand that they should not be so relieved, and the conclusion is that they are both estopped, by the order and agreement of the court and the intervention of Jackson, from applying any part of the three-fourths working interest, or of the proceeds thereof, thereby assured to the Panther free from the claims of the parties to the Wildcat suit to the payment of the rents reserved in Jackson's lease of November 13, 1913.

[3] Finally, it is insisted that the decree for the injunction should be reversed, because section 18 of the act of October 15, 1914, entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," provides:

"That, except as otherwise provided in section 16 of this act, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby." 38 Stat. 738, c. 323 (Comp. St. 1916, § 1243b).

And the court below ordered and issued its injunction without compelling the Panther to give any bond, although counsel for Mr. Swift moved the court to require it.

But the restraining order and injunction in this case were issued by the court below, in lieu of proceedings for contempt of that court, to prevent the impairment and defeat of the just exercise of its undoubted jurisdiction to protect and enforce its lawful orders and to preserve the title made by it under them. The unlawful interference of Mr. Swift with the enforcement of the just orders and the preservation of the lawful titles made by the court below was a contempt of that court, and, if continued, might well have been punished as such. The issue of the injunction was but a milder method of protecting its jurisdiction, orders, and titles from unlawful impairment. There is nothing in section 18 to indicate, and, until that intention is clearly expressed, it cannot be presumed that the Congress intended thereby to limit or condition in any way the power of the federal court by means of its injunction, any more than by means of proceedings for contempt,

to preserve and protect its jurisdiction, acts or titles from unlawful impairment or destruction. Section 18, Act Oct. 15, 1914, is, like section 720 of the Revised Statutes, now section 265 of the Judicial Code, inapplicable to injunctions of the federal courts issued for this purpose. Moreover, Mr. Swift has sustained no loss or injury from the absence of the bond, for the condition of it would have been to pay such costs and damages as he would have suffered if he should be found to have been wrongfully enjoined or restrained, and he is found to have been rightfully enjoined and restrained. If now this court were to reverse the order and decree for the injunction, that act would be a futile one, for, in view of the opinions of the court below and of this court, the former would undoubtedly immediately issue another like injunction. The order and decree for the injunction are not reversible, because no bond was taken.

The conclusion which has been reached upon the merits of this case seems to demonstrate the fact that the court below unwittingly fell into an error in denying the motion of Swift for leave to intervene, to answer, to file a cross-bill, to plead and to prove in the Wildcat suit his claim under his lease, and there to recover his just share of the one-fourth interest secured to the receiver for the benefit of the parties in that case. As we have seen, he is estopped by Jackson's intervention in that case from enforcing his claim against the three-fourths interest the Panther has secured, and, as the Panther has no other property, and, as Swift claims to have succeeded to Saber Jackson's interest, he is entitled to Jackson's share of the one-fourth interest going to the receiver. As that one-fourth interest is within the exclusive jurisdiction of the court below in the Wildcat suit, and as Swift's only remedy to collect the rent reserved in the lease he holds is by an intervention in that suit, the court below cannot justly deny him the right to intervene, and to secure an adjudication of the merits of his claim therein, while at the same time it denies him, as it has in our opinion rightfully done, the right to enforce his claim outside that court by levy upon and application of the three-fourths interest going to the Panther to the payment of his claim.

[4] In intervention there are two classes of cases—one class in which the intervention is not indispensable to the preservation or enforcement of the claim of the petitioner, and there the permission to intervene is discretionary with the court; another class in which the petitioner claims a lien upon or an interest in specific property in the exclusive jurisdiction and subject to the exclusive disposition of a court, and his interest therein can be established, preserved, or enforced in no other way than by the determination and action of that court. The petitioner, who has a claim of the latter class, has an absolute right to intervene in the proceeding in which the court holds the exclusive custody and dominion of the property, permission for him to intervene is not discretionary with the court, and he may review by appeal an order refusing that right. Western Union Telegraph Co. v. United States & Mexican Trust Co., 221 Fed. 545, 552, 137 C. C. A. 113, 120; Credits Commutation Co. v. United States, 177 U. S. 311, 317, 20 Sup. Ct. 636, 44 L. Ed. 782; Credits Commutation Co. v. United States, 91 Fed.

570, 573, 34 C. C. A. 12; United States Trust Co. v. Chicago Terminal Transfer R. R. Co., 188 Fed. 292, 296, 110 C. C. A. 270; Minot v. Mastin, 95 Fed. 734, 739, 37 C. C. A. 234, 239; United States v. Philips, 107 Fed. 824, 46 C. C. A. 660.

It may be that the order denying Swift leave to intervene may be reviewed as an intermediate order on an appeal from the final order of decree in the Wildcat suit by Jackson, who perhaps represents Swift's claim in that suit in his absence (Western Union Telegraph Co. v. United States & Mexican Trust Co., 221 Fed. 545, 551, 137 C. C. A. 113, 119); but it is desirable, in the interest of a speedy and conclusive disposition of the receiver's one-fourth interest and its proceeds, if it is not already too late; that Swift, if he still desires, should yet have an opportunity to prove and plead his claim and have an adjudication of it upon its merits in the Wildcat suit in the court below, before that court enters its final decree of distribution therein, and although the order denying his intervention is not reviewable on this appeal, the views of this court regarding his right to intervene have been expressed, in the hope that the court below may yet find a way to permit him so to do.

The injunctive order and decree was just and equitable, and it is affirmed.