CREDITS COMMUTATION CO. et al. v. UNITED STATES et al. SAME v.

DEXTER et al. SAME v. AMES et al.

(Circuit Court of Appeals, Eighth Circuit. December 7, 1898.)

Nos. 995–997.

APPEALABLE ORDERS—DENIAL OF LEAVE TO INTERVENE.
    An order refusing leave to intervene in a pending suit, where such intervention is not essential to the preservation of the petitioner's rights, but such rights may be asserted in an independent suit, is not a final order from which an appeal lies. Such an order is, from the nature of the case, discretionary, and, since its effect is to refuse to permit the petitioner to become a party and to litigate his claims in that suit, it cannot conclude him as to such claims, though it may purport on its face not to be made in the exercise of discretion, but to deny such claims on the merits.[1]

Appeals from the Circuit Court of the United States for the District of Nebraska.

[1] As to finality of judgments and decrees for purpose of review, see note to Central Trust Co. v. Madden, 17 C. C. A. 238, and, supplemental thereto, note to Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.

Winslow S. Pierce and G. M. Lambertson (Lawrence Greer, on the brief), for the motion.

John C. Coombs and Henry J. Taylor, opposed.

Before CALDWELL and THAYER, Circuit Judges.

PER CURIAM. These cases are before the court on the present occasion on motions to dismiss the several appeals. The appeals were taken from orders made by the Honorable WALTER H. SANBORN, Circuit Judge, which denied the application of the Credits Commutation Company and the Combination Bridge Company, the appellants, for leave to intervene in three suits which were at the time pending in the circuit court of the United States for the district of Nebraska. One of these suits was a bill filed on October 9, 1893, by Oliver Ames, 2d, and Samuel Carr, executors of the last will and testament of Frederick L. Ames, deceased, and others, against the Union Pacific Railway Company and others, which is commonly termed the "Stockholders' Suit"; the other was a bill which was filed on January 21, 1895, by F. Gordon Dexter and Oliver Ames, 2d, trustees, against the Union Pacific Railway Company and others, for the purpose of foreclosing the first mortgage on the Union Pacific Railway; and the third was a bill filed on January 23, 1897, by the United States against the Union Pacific Railway Company and others, for the purpose of foreclosing its statutory lien upon the property of said railway company. On April 28, 1897, when said cases were about ripe for a final decree, the Credits Commutation Company and the Combination Bridge Company presented an intervening petition to Judge SANBORN, and asked leave to file the same in each of said suits, and thereby become parties thereto. On the presentation of the intervening petition, an order was made requiring all parties in interest in said suits to show cause, on a day specified, why the prayer of the petitioners for leave to intervene should not be granted. On the return day of said order, objections to the filing of said intervening petition having been duly made and considered, it was ordered "that the prayers of the petitioners for leave to intervene herein be, and the same are hereby, denied, not as a matter of discretion, but because said petitions do not state facts sufficient to show that the petitioners, or either of them, have a legal right to intervene." From this order, which was entered at the same time and in the same form in each of the above cases, the present appeals were taken.

The ground upon which the petitioners below, who are the appellants here, sought leave to intervene in the pending litigation against the Union Pacific Railway Company, was as follows: The Credits Commutation Company alleged that it was entitled, as beneficiary in a deed of assignment, to three-fourths of the capital stock of the Sioux City & Northern Railway Company, which was a railroad extending northwardly from Sioux City, Iowa, for a distance of about 100 miles, to a junction with the Great Northern Railroad, in the state of Minnesota; that it was also entitled to all the stock of the Sioux City, O'Neill & Western Railroad, which was a road extending westwardly from Sioux City, Iowa, to O'Neill, Neb., a distance of about 130 miles; that these roads were connected at Sioux City, Iowa, by a bridge

across the Missouri river, whose capital stock was all owned by the Credits Commutation Company; that the petitioners proposed to extend the Sioux City, O'Neill & Western Railroad to a junction with the Union Pacific Railroad in the western part of the state of Nebraska; that their ultimate design was to form a line of transportation, by means of the aforesaid railroad and bridge companies, and certain terminal properties in Sioux City which the petitioners then owned, and thereby promote an interchange of traffic between the head of the Great Lakes, at Duluth, and the region of country lying west of the Missouri river, opposite to Sioux City. They further averred in the intervening complaint that, by virtue of various provisions of the act creating the Union Pacific Railway Company and the amendments thereof, particularly by sections 14 and 15 of the act of July 1, 1862 (12 Stat. 489, c. 120), and by section 17 of the act of July 2, 1864 (13 Stat. 356, c. 216), the right was accorded to the petitioners to form a junction with the Union Pacific Railroad not farther west than the one hundredth meridian of longitude, whenever they should have completed their proposed line of railroad through the states of Iowa or Minnesota to Sioux City, and thence southwestwardly to a point on the main line of the Union Pacific Railroad. In view of the foregoing facts, the petitioners craved leave to intervene and be made parties to the three suits then pending against the Union Pacific Railway Company, to the end that they might, in the first place, resist, and, if possible, prevent, a foreclosure sale of the property and franchises of said railroad company under decrees made in the pending suits, or, if defeated in that object, to the end that they might preserve their alleged right to connect their proposed line of railroad with the main line of the Union Pacific Railway Company, by appropriate provisions inserted in the decree of foreclosure, provided a foreclosure sale of the latter company's property and franchise should eventually be ordered.

The motion to dismiss the several appeals is grounded on the proposition that the order from which the several appeals were taken was not a final judgment or decree from which an appeal will lie to this court, and upon the further proposition that the action of the lower court in refusing leave to intervene is not reviewable on appeal, inasmuch as it rested in the sound discretion of the chancellor to admit or reject the intervention. Both of these positions are, in our opinion, well taken. The order denying leave to intervene was not "final," within any of the definitions usually given of a final order or decree, inasmuch as it did not dispose of the petitioners' alleged right to form a junction with the main line of the Union Pacific Railroad, which was the substantial right asserted, but left them at full liberty to litigate that question by an original bill, or by any other method of procedure which they saw fit to adopt. The trial court could not, and did not, finally adjudicate any of the questions which were presented by the intervening complaint, for the reason that it refused to give the petitioners a standing in court to be heard with respect to such questions, and also refused to permit the intervening complaint to be filed and become a part of the record. None of the issues, therefore, which were tendered by the petitioners in their in-

tervening complaint, ever passed under judicial review in such a manner as to estop the petitioners from tendering like issues on any future occasion, because the trial court refused to allow such issues to be incorporated into the pending suits in such a form that they could be tried and determined. When such action is taken,—that is to say, when leave to intervene in an equity case is asked and refused,—the rule, so far as we are aware, is well settled that the order thus made denying leave to intervene is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding. Such orders not only lack the finality which is necessary to support an appeal, but it is usually said of them that they cannot be reviewed, because they merely involve an exercise of the discretionary powers of the trial court. Ex parte Cutting, 94 U. S. 14; Hamlin v. Trust Co., 47 U. S. App. 422, 428, 429, 24 C. C. A. 271, and 78 Fed. 664; Jones & Laughlins v. Sands, 51 U. S. App. 153, 157, 25 C. C. A. 233, and 79 Fed. 913; In re Streett, Petitioner, 8 U. S. App. 645, 650, 10 C. C. A. 446, 62 Fed. 218.

It is doubtless true that cases may arise where a denial of the right of a third party to intervene therein would be a practical denial of certain relief to which the intervenor is fairly entitled, and can only obtain by an intervention. Cases of this sort are those where there is a fund in court undergoing administration, to which a third party asserts some right which will be lost in the event that he is not allowed to intervene before the fund is dissipated. In such cases an order denying leave to intervene is not discretionary with the chancellor, and will generally furnish the basis for an appeal, since it finally disposes of the intervener's claim by denying him all right to relief. The cases at bar, however, are not of that character. The petitioners were under no obligation to intervene in the litigation against the Union Pacific Railway Company to preserve their alleged right to form a junction with the road of that company when they should have completed their own road to a suitable junction point. The question which they sought to litigate in the pending litigation could, we think, with more propriety and with less difficulty, have been litigated by an independent bill, after they had completed, or were about completing, their line to a suitable junction point. Prior to that time, the questions which they sought to raise by means of the intervening petition were speculative questions, which the lower court, as we think, very properly refused to consider or determine.

It was suggested in argument that, as the lower court saw fit to insert a clause in its order that it had not refused leave to intervene "as a matter of discretion," but because the petitioners had no legal right to intervene, therefore the motion to dismiss is not tenable, so far as it is based on the discretionary character of the order. The answer to this suggestion is that the trial court, by inserting such a clause in its order explanatory thereof, could not give an effect to the order which was in any respect different from the effect which it had by virtue of the nature of the proceeding in which the order was made. The intervening petition merely invoked the discretionary power of the court, and it could exercise no other power in the prem-

ises, whatever the purpose of the court or its own declaration on the subject may have been. The fact is that the lower court simply exercised its discretionary authority in denying leave to intervene, and it did not succeed in rendering a judgment upon the merits of the petitioners' claim which will conclude them in any subsequent suit, although it may have intended to do so. As it is now well settled, since the decision in McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118, that an appeal will only lie to this court from orders or decrees which are final in their character, and which involve something more than the exercise of purely discretionary powers,—except in some cases for which special provision is made by the seventh section of the act under which this court was created (26 Stat. 826, c. 517),—it follows that the appeals cannot be entertained, and that the motions to dismiss the same must be sustained. It is so ordered.