ILLINOIS STEEL CO. v. RAMSEY et al.†

SAME v. AIGLER et al.

(Circuit Court of Appeals, Eighth Circuit. January 29, 1910.)

Nos. 2988, 3011.

**1. APPEAL AND ERROR (§ 95*) — APPEALABLE ORDER—FINALITY OF DETERMINATION.**

Where a court by its receiver has taken possession of all of the property of a corporation in a creditors' suit, another creditor may in a proper case intervene in such suit as matter of right, and an order denying it such right is appealable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 652; Dec. Dig. § 95.*

Finality of judgments and decrees for purposes of review, see notes to Brush Electric Co. v. Electric Improvement Co. of San Jose, 2 C. C. A. 379; Central Trust Co. of New York v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.]

**2. APPEAL AND ERROR (§ 143*)—PERSONS ENTITLED TO APPEAL—INTERVENERS.**

Where a petitioner was permitted to intervene in a cause, and process issued on its petition to bring in new parties, it thereby became a party

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied April 15, 1910.

, to the cause, and the court cannot thereafter strike its petition from the files without the right to appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 921; Dec. Dig. § 143.*]

3. PARTIES (§ 96*)—INTERVENTION—WAIVER OF OBJECTION.

The complainant in a creditors' suit, by consenting to the issuance of process on a petition of intervention filed by another creditor and by demurring thereto, waived the right to thereafter object to the right of such creditor to intervene.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 175; Dec. Dig. § 96.*]

4. RECEIVERS (§ 120*)—POWER TO AUTHORIZE ISSUE OF RECEIVER'S CERTIFICATES.

A court of equity which has appointed a receiver for the property of a railroad company to be administered for the benefit of creditors has power to authorize the receiver to raise money necessary for the preservation and management of the property by the issuance and sale of receiver's certificates, but such power is to be exercised with great caution, and, if possible, with the consent or acquiescence of the parties interested in the fund, and where there is objection receiver's certificates should not be issued on the unsupported petition of the receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 208; Dec. Dig. § 120.*

Receivers' certificates, see note to Postal Tel. Cable Co. v. Vane, 26 C. C. A. 350; Nowell v. International Trust Co., 94 C. C. A. 601.]

5. RECEIVERS (§ 117*)—POWER TO AUTHORIZE ISSUE OF RECEIVERS' CERTIFICATES.

The power of a court of equity, which has undertaken the administration of railroad property through its receiver for the benefit of creditors to authorize the issue of receivers' certificates, is limited by, and is coextensive with, its obligation to conserve the property in its custody, and any expenditure of money that has not this primary purpose is beyond the power of the court, and unauthorized.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 204; Dec. Dig. § 117.*]

6. RECEIVERS (§ 119*)—POWER TO AUTHORIZE ISSUE OF RECEIVERS' CERTIFICATES.

A receiver was appointed for the property of a railroad company having a road 130 miles in length in a creditors' suit by a creditor having a judgment for less than $2,400, and within four months thereafter on application filed by the president of the company as agent of the receiver, unsupported by any evidence, without notice to other parties in interest, and against the objection of a large creditor, the receiver was authorized to issue certificates to the amount of $200,000 to be a part of a total issue of $500,000. Held, that the court exceeded its power in making such order, which, without satisfactory proof that the issue of the certificates was necessary to conserve the property in the interest of creditors was wholly unauthorized.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 207; Dec. Dig. § 119.*]

Appeals from the Circuit Court of the United States for the Eastern District of Oklahoma.

In Equity: Suit by Ralph W. Aigler against the Oklahoma Central Railway Company and the Canadian Valley Construction Company. The Illinois Steel Company appeals from an order striking from the files its amended petition in intervention and from an order authorizing Asa E. Ramsey as receiver for the defendant railroad company to issue receiver's certificates. Both orders reversed.

June 2, 1908. Ralph W. Aigler, as a judgment creditor of the Oklahoma Central Railway Company, filed a bill in the United States Circuit Court for the Eastern District of Oklahoma in behalf of himself and all other creditors against said Railway Company and the Canadian Valley Construction Company, wherein he prayed for an accounting between the Railway Company and the Construction Company, and that all the property, income, tolls, issues, and profits as well as the assets of every name and nature of said defendant Railway Company might be sold at a judicial sale, and the proceeds thereof justly and equitably applied for the equal benefit of all creditors of said company in accordance with their just liens, rights, and claims; that a receiver be appointed to take possession of the property and assets of the Railway Company and administer the same under the direction of the court until a sale could be had. On the same day, by consent of the Railway Company, Asa E. Ramsey was appointed such receiver. On July 1, 1908, the Illinois Steel Company, a corporation of the state of Illinois, and a creditor of the Railway Company in the sum of $129,124.64 for steel rails, steel splice bars, steel track spikes, and steel track bolts, sold to said Railway Company and used in the construction of its railway, on leave granted by the court filed its petition in intervention in said action, and prayed therein that process issue against all parties interested, and that upon final hearing the claim of said Steel Company be adjudged a prior lien on all the property of said Railway Company and paid by the receiver as a preferred debt and obligation of said Railway Company. July 23, 1908. Aigler, through his attorneys, filed in court a consent that the Steel Company, as intervener, should have a writ of subpoena against all parties in interest not then of record in said suit. On September 15 and 16, 1908, Aigler, the complainant, and Ramsey, the receiver, demurred to the petition in intervention for want of equity. October 10, 1908, after argument, the court sustained the demurrer of Aigler, and granted leave to the Steel Company to amend its petition within 30 days. November 6, 1908, the Steel Company filed its amended petition in intervention, which was as follows:

"(1) That it is a corporation duly organized and existing under and by virtue of the laws of the state of Illinois; that it has its principal place of business in the city of Chicago, in the county of Cook, in said state; that it is engaged in the business, among other things, of manufacturing and selling steel rails, splice bars, spikes, and bolts.

"(2) That the Oklahoma Central Railway Company is a corporation organized and existing under and by virtue of the territory of Oklahoma, now state of Oklahoma, and a citizen of the state of Oklahoma, and the Canadian Valley Construction Company is a corporation organized and existing under and by virtue of the laws of the United States, applicable to and in force in the territory formerly known as Indian Territory, now a part of the state of Oklahoma; that said defendant, the Oklahoma Central Railway Company, is authorized to construct, own, and operate a railway from the city of Lehigh in a northwesterly direction through the counties of Coal, Pontotoc, Garven, McLain, and Grady, all located in the Eastern judicial district of Oklahoma; that the Canadian Valley Construction Company was organized for the purpose of constructing the railroad aforesaid.

"(3) That on the 23d day of December, 1905, your intervening petitioner entered into a written contract with said defendant, the Oklahoma Central Railway Company, to sell and deliver to the said Railway Company, 15,000 gross tons of No. 1 steel rails; also a sufficient quantity of its standard steel splice bars to lay the rails covered by said contract, said Railway Company agreeing to accept not exceeding 5 per cent. of No. 2 steel rails, in addition to the above-mentioned quantity of No. 1 steel rails, and said Railway Company, agreeing to pay for first quality steel rails $28 per gross ton and $26.60 per gross ton for second quality steel rails and $1.50 per 100 pounds for said splice bars, said parties also agreeing to furnish and receive the necessary standard steel track spikes at $1.85 per one hundred pounds and the necessary standard steel track bolts at $2.45 per one hundred pounds.

"(4) That your petitioner in fulfillment of said contract delivered to said Railway Company 13,430 $1140/_{2240}$ tons of first quality steel rails, 676 $2220/_{2240}$ tons of second quality steel rails, 4,265 kegs of spikes, 785 kegs of bolts, and 907 $1840/_{2240}$ tons of splice bars; that the balance of said steel rails, splice bars, spikes, and bolts called for by said contract were not de-

livered for the reason that said defendant Railway Company was in default under said contract, in that it had failed to pay for the material already delivered in accordance with the terms of said contract.

"(5) That there became due to your petitioner under the terms of said contract long before the filing of this petition the sum of $129,424.64, together with interest thereon; that there is now due and owing to your petitioner from said Railway Company under the terms of said contract, after allowing said Railway Company all just and proper credits, the sum last above mentioned.

"(6) That your petitioner has frequently requested said Railway Company to pay your petitioner the balance so due and unpaid, but said Railway Company has neglected and failed so to do.

"(7) That all of the steel rails, splice bars, spikes, and bolts delivered as aforesaid by your petitioner to said Railway Company were used as your petitioner is informed and believes in the construction, maintenance, operation, and repair of the railroad of said Railway Company; that all or a part of said material was necessary and essential as your petitioner is informed and believes to enable said defendant to operate its road as a going concern; that such use of said steel rails, splice bars, spikes, and bolts has largely increased and added to the value of said railroad, and has subtantially increased the assets of said defendant Railway Company; that by means and by reason of such use of said steel rails, splice bars, spikes, and bolts your petitioner ought to have and is entitled to a lien upon all the property, real, personal, and mixed, of said defendant.

"(8) That your petitioner is the holder as security for its claim of 160 first-mortgage trust bonds of said Railway Company, which said bonds are secured by a trust deed to Western Trust Savings Bank of Chicago, Ill., conveying to said bank all of the property of said Railway Company of every kind, character and description, including rights and franchises; that said trust deeds securing said bonds is a lien upon all of the property of the Oklahoma Central Railway Company, and that as the holder of 160 of the bonds secured by said trust deed this petitioner is entitled to and has a lien upon all of the assets of said Railway Company.

"(9) That said defendant, the Railway Company, was organized as your petitioner is informed and believes some time in the month of September, 1904, for the purpose of building a line of railway as above alleged in the second paragraph hereof; that the persons who were connected with and were instrumental in the organization of said Railway Company were, as your petitioner is informed and believes, Dorset Carter, of Purcell, Oklahoma, Herman Wollenburger, J. S. Keefe, Willoughby G. Wallen, and Joseph E. Otis, of Chicago, Illinois, Solomon Frederick Van Oss, The Hague, Holland, and certain other persons to your petitioner unknown; that the authorized capital stock of said company is $10,000,000; that thereafter and prior to the 14th day of September, 1905, these same persons caused to be incorporated the Canadian Valley Construction Company with a capital stock of $30,000, of which as your petitioner is informed and believes $16,000 has been paid in; that the president of said Railway Company has at all times been one Dorset Carter, who has also acted and is now acting as general manager of said Construction Company; that the officers and directors of said Construction Company whose names are unknown to your petitioner with the exception of said Dorset Carter, have been and are mere dummies; that said Construction Company has always been and is now under and subject to the control of the officers and directors of said Railway Company; that the said Construction Company was organized by the persons aforesaid for the sole purpose of building the railroad of said Railway Company; that, through said Construction Company, the persons aforesaid planned to use and put upon the market an amount of stock and bonds largely in excess of the cost of the railroad of said Railway Company; that said Construction Company was organized as aforesaid merely as a scheme or device to enable the persons aforesaid to obtain all of the capital stock of said Railway Company.

"(10) That pursuant to said scheme, the officers and directors of said Railway Company, on or about the 14th day of September, 1905, entered into a contract purporting to be made between said Railway Company and said Construction Company, but as a matter of fact between said officers and directors

.as represented by the Railway Company and themselves; that in and by the terms of said contract said Construction Company agreed to construct the line of railway of said Railway Company along the route already surveyed, said Construction Company to furnish, secure, and pay for all necessary right of way and all material used in the construction of said road, to construct necessary water tanks, to build all necessary fence, to construct and furnish complete station buildings, side tracks, repair shops, engine houses, turntables, coal chutes, and six steel bridges, and to equip said road when constructed with rolling stock and motive power, and provide at its own expense the best and most suitable tools and appliances; said Construction Company further to pay in full for all materials and equipment by it furnished for the construction and operation of the line, and for all labor and every other liability incurred in connection with the construction of said road; that in payment therefor said Railway Company agreed to pay or cause to be paid to the Construction Company as and when it completed each 10 miles of the main line of said road, its first-mortgage 5 per cent. gold bonds to the amount of $200,000 and $200,000 of its capital stock; that your petitioner is informed and believes that it was the belief and expectation of the incorporators of said Railway Company being the persons aforesaid that said railroad could be built and equipped in accordance with the terms of said contract for not exceeding $18,000 per mile; that the actual cost of the construction and equipment of said railroad proved to be about $19,000 per mile; that the cost of the construction and equipment of said railroad did not exceed $20,000 per mile; that the total length of said railroad is approximately 130 miles and that the total cost thereof has been considerably less than $2,600,000.

"(11) That thereafter on or about the 1st day of November, 1905, said persons caused a trust deed to be made by the Railway Company to Western Trust & Savings Bank of Chicago, dated the first day of November, 1905, whereby said Railway Company conveyed to said trustee all of its estate and property, including its right of way in trust to secure a total authorized issue of first-mortgage 5 per cent. gold bonds, not exceeding in the aggregate $10,000,000, said bonds being dated the 1st day of December, 1905; that under and pursuant to the original plan and scheme of the incorporators of said railroad bonds of the total sum of $2,640,000 were executed by said Railway Company and certified by said trustee, and delivered as your petitioner is informed and believes either to said Construction Company or to the incorporators of said Railway Company, said bonds being delivered during the course of the construction of said railroad; that additional bonds as your petitioner is informed and believes have been issued and certified amounting to $540,000; that the persons heretofore referred to as the incorporators of said railroad caused said Railway Company to issue to said Construction Company a certificate or certificates for 27,100 shares of the capital stock of said Railway Company of the par value of $2,710,000.

"(12) That after the organization of said Railway Company and said Construction Company, the persons mentioned above and others who were unknown to your petitioner as your petitioner is informed and believes, organized a syndicate for the purpose of disposing of the stock and bonds of said Railway Company; that all of said stock and bonds issued as aforesaid were turned over as your petitioner is informed and believes to said syndicate; that said syndicate was controlled and managed by Herman Wollenburger, at the time of the organization of said Railway Company the vice president of the Western Trust & Savings Bank, the trustee of said bonds, Joseph E. Otis, the president of said bank, Solomon Frederick Van Oss, and J. F. Keefe, heretofore referred to, and Abraham Oppenheim; that said syndicate as your petitioner is informed and believes entered into a contract with said Construction Company by the terms of which said syndicate agreed to underwrite the bonds and stocks received by said Construction Company from said Railway Company on the basis of $800 for each bond and each 10 shares of stock —that is to say, said Construction Company was to receive for every bond and 10 shares of stock of said Railway Company the sum of $800; that under and pursuant to said agreement all of the outstanding bonds and 27,100 shares of stock of said corporation were delivered to said syndicate; that neither said Construction Company nor said Railway Company has ever received any compensation or consideration for the shares of stock issued by said Railway

Company to said Construction Company and by said Construction Company delivered to said syndicate.

"(13) That your petitioner is informed and believes that said syndicate now owns many of said bonds; that it has sold a large part thereof to various persons whose names are to your petitioner unknown at a discount of approximately 20 cents on the dollar upon the agreement and understanding that such purchasers are to participate in the capital stock of said corporation on a basis unknown to your petitioner; that said syndicate has issued to purchasers of said bonds a certificate evidencing the interest of said syndicate member and said purchaser in the stock of said Railway Company; that the records of the commissioner of corporations of the state of Oklahoma show that the 27,100 shares above mentioned stand on the books of the Oklahoma Central Railway Company in the name of the Canadian Valley Construction Company, but have been indorsed in blank by said Canadian Construction Company and are in the hands of the following named trustees:   Joseph E. Otis, The Rookery, Chicago: J. S. Keefe, No. 1222 Commercial National Bank Building, Chicago; H. Wollenburger, The Rookery, Chicago; S. F. Van Oss, The Hague, Holland; that by reason of the facts above set forth the said trustees, Joseph E. Otis, J. S. Keefe, H. Wollenburger, and S. F. Van Oss are personally liable to said Railway Company for the amount of the par value of the stock standing in their names; that each of the participators in the syndicate to the extent of his participation is likewise liable to said Railway Company.

"(14) Your petitioner further shows that some time prior to the 2d day of June, 1908, the funds derived from the sale of said bonds became exhausted; that said Railway Company and said Construction Company were both heavily in debt; that said railroad was not entirely completed and equipped, and the members of said syndicate were unable to raise further funds from the sale of additional bonds for the purpose of paying off the indebtedness of said company and completing said railroad; that for the purpose of financing said railroad until it should prove to be either a success or a failure, and for the further purpose of hindering and delaying the creditors both of said Railway Company and of said Construction Company, the members of said syndicate determined to place said Railway Company and said Construction Company in the hands of receivers; that thereupon, as your petitioner is informed and believes, all or a part of the members of said syndicate being the same persons who had planned and procured the incorporation of said Railway Company and said Construction Company, acquired from Fairbanks, Morse & Co., of Chicago, Ill., a note of said Railway Company in the sum of $2,301.11; that thereafter on the 2d day of June they caused a suit to be commenced on the common-law side of this court by Ralph W. Aigler on said note; that on the same day judgment was confessed by Dorset Carter, the president of said Railway Company, and a judgment was entered for the sum of $2,424.34; that thereafter on the same day—that is, on the 2d day of June, 1908—an execution was issued on said judgment, and a return of said execution (no property found) was at once made at the direction of counsel for plaintiff; that your petitioner is informed and believes and so states the facts to be that no levy or demand was made; that said judgment was obtained and said return was procured for the sole purpose of giving the court jurisdiction to entertain a creditor's bill; that your petitioner is informed and believes and so states the fact to be that the issuance of said execution and the return thereof (no property found) was not made in good faith; that thereafter and on the same day said persons composing said syndicate caused a creditor's bill to be filed by said Aigler upon said judgment and a receiver to be appointed for said Railway Company; that said creditor's bill was based upon the judgment above mentioned and the return of an execution thereon (no property found); that because of the fact connected with the issuance and return of said execution this court had no jurisdiction to entertain said creditor's bill and to appoint a receiver of said Railway Company; that therefore said creditor's bill should be dismissed and said receiver discharged; that so far as the above facts are matters of record your petitioner refers to the records and files of this court in the case above described, and makes said records and files a part hereof.

"(15) That upon the same day—that is, on the 2d day of June, 1908—Herman Wollenburger, vice president of the Oklahoma Central Railway Company and formerly vice president of Western Trust & Savings Bank, trustee under said mortgage, one of the managers of said syndicate, commenced a suit on the common-law side of this court against the Canadian Valley Construction Company; that on the same day a confession of judgment was filed by the Construction Company by Dorset Carter, its general manager, and an answer was filed admitting said indebtedness to J. F. Sharp, the general attorney of said Railway Company and of said Construction Company and one of the directors of said Railway Company, and thereupon a judgment was entered in the sum of $5,175; that on the same day an execution was issued and returned by order of counsel for complainant (no property found); that on the same day—that is, on the 2d day of June, 1908—a creditor's bill was filed by said Wollenburger based upon said judgment, and a receiver was appointed by this court: that your petitioner is informed and believes and so states the fact to be that no demand was made for payment of the judgment aforesaid; that no levy was made upon said execution, and that the same was not returned in good faith (no property found), but that said judgment was entered, and said execution issued and caused to be returned (no property found) for the sole purpose of enabling said syndicate to place said Construction Company in the hands of a receiver; that, for the purpose of giving said proceeding a semblance of good faith and fairness, a bill of intervention was filed on the 4th day of June, 1908, by Solomon Frederick Van Oss, Alexander Van Oss, and Jacobus Santilhano, copartners trading under the firm name of Van Oss & Co., and Abraham Oppenheim, Louis Den Beer Poortugael, and Francois Van Alphan, copartners trading under the firm name of Oppenheim & Van Till, whose firms were both members of the syndicate above mentioned, setting up that they were holders of a large amount of the bonds of said corporation and stockholders in said corporation and joining in the prayer of said creditor's bill for the appointment of a receiver: that because of the facts alleged above said creditor's bill should be dismissed and said receiver discharged; that, so far as the things above alleged are matters of record, your petitioner refers to the files and records in this court in the cases described above and makes said files and records a part hereof.

"(16) That on the same day—that is, on the 2d day of June, 1908—the same persons who had caused the suits above mentioned to be begun against said Railway Company and said Construction Company caused a bill to be filed by the Western Trust & Savings Bank as trustee under the trust deed hereinbefore described in this court for the apparent purpose of foreclosing said trust deed: that the prayer of said bill is for a foreclosure of said trust deed and for the appointment of a receiver; that in and by said trust deed it was and is the duty of said trustee to protect the interests of the holders of the bonds secured by said trust deed; that said trustee unmindful of its duty under said trust deed caused said bill to be filed for the sole purpose of rendering more stable if possible the appointment of the receiver appointed in the case of Aigler v. Oklahoma Central Railway Company, above mentioned, and for the additional purpose of hindering and delaying the creditors of said Railway Company; that the actions of said trustee in this matter are entirely directed by the promoters of said Railway Company and the syndicate aforesaid, and its actions in bringing this suit were entirely in behalf of said persons: that at least two of the officers of said Western Trust & Savings Bank are directly and financially interested in promoting said railroad; that the president of said bank is one Joseph E. Otis, who is also one of the managers of the syndicate hereinbefore mentioned, and one of the trustees holding practically all of the stock of said Railway Company; that the secretary of said bank is one Willoughby G. Wallen, who is also the treasurer of said Railway Company, who, as your petitioner is informed and believes, is largely interested in said underwriting syndicate; that since the institution of said suit by said Western Trust & Savings Bank nothing further has been done therein; that no effort has been made by said trustee to intervene or take part in the suit of Aigler v. Railway Company, aforesaid, but on the contrary said trustee has wholly neglected to protect the interests of the bondholders in said suit.

"(17) That your petitioner is informed and believes and so states the fact to be that the real holders and owners of the note given by the Oklahoma Central Railway to Fairbanks, Morse & Co., above described upon which the judgment was obtained by said Aigler and said creditor's bill by him brought are largely indebted to said Railway Company, upon subscriptions to the capital stock of said company; that the indebtedness due said Railway Company from the holders and owners of said note should be set off as against the amount due upon said note; that in case this is done, it will be found that the holders and owners of said note are largely indebted to said Railway Company over and above the amount of said note.

"(18) That your petitioner is informed and believes and so states the fact to be that the said Herman Wollenburger, the plaintiff in the action on the common-law side of this court above described and the complainant in the creditor's bill hereinabove mentioned is largely indebted to said Railway Company for unpaid subscriptions to its capital stock; that it will be found that said Wollenburger is indebted to said Railway Company largely in excess of the amount due on said note; that such indebtedness for said unpaid subscriptions should be set off as against the amount due said Wollenburger on the note described in said actions.

"(19) Your petitioner further alleges that the institution of all of said actions is a part of the scheme of the promoters of said Railway Company and the members of said syndicate to avoid their liability as stockholders and to hinder and delay their creditors; that although each one of said actions purports to be brought in good faith by different parties represented by different counsel and solicitors, nevertheless, as your petitioner is informed and believes all of said actions were instituted at the instigation of the same parties and are being conducted by the same counsel; that this court should either dismiss all of said actions and discharge the receivers appointed therein, or if it is believed that a receiver should be allowed to remain in charge of the property of said railroad for the purpose of protecting the interests of all parties, then all of said suits should be consolidated and a new receiver appointed to take charge of and manage all of the properties of said Railway Company.

"(20) That the organization of the Canadian Valley Construction Company was a fraudulent device and scheme of the promoters of said railroad for the purpose of enabling them to obtain possession of and hold, or place upon the market, the stock of said railroad company without paying therefor; that said scheme was and is a fraud upon the creditors of said Railway Company; that by means of said device stock of the par value of $2,710,000 was issued and delivered without any consideration therefor whatsoever; that many persons, as your petitioner is informed and believes, are equitable owners of a part of said stock, the legal title to which is in the trustee above mentioned; that all the members of said syndicate and all of the equitable holders of said stock received and obtained their interest in said stock while knowing that nothing whatsoever had ever been paid therefor, and that said stock was wholly unpaid for; that if a receiver is continued in charge of the property of the said Railway Company he should be directed to proceed at once by appropriate action to collect the amounts unpaid on the subscriptions to the capital stock of said Railway Company; that if a sale of the assets and property of said Railway Company shall be found to be necessary before the institution of the action last above mentioned then said assets and property should be sold subject to said mortgage.

"(21) That your petitioner brings this bill in behalf of himself and all other creditors of said defendant similarly situated."

The Steel Company in its prayer prayed that all the parties mentioned in its said petition should be made parties defendant; that the bills of Aigler and Wollenburger be dismissed and the receivers discharged; that if the court should determine that said creditors' bills should not be dismissed, then that they be consolidated and proceeded with as one case; that your petitioner be allowed to become a co-complainant in said consolidated cause, and that a new receiver be appointed therein; that the intervening petition of the Steel Company might stand as an answer of the Steel Company to the bills of complaint in the Aigler and Wollenburger suits; that the relief asked for

in said bills be denied; that in the event said creditors' bills should not be dismissed that an account might be taken as to the claim of the Steel Company against the Oklahoma Central Railway Company, and the amount found due from said Railway Company to your petitioner ascertained, and that said Steel Company might be decreed to be entitled to a lien upon all of the property of said Oklahoma Central Railway Company, or its receiver might be decreed to pay to said petitioner the amount so found due with interest thereon in due course as a prior and preferred debt of the Railway Company. The bill of intervention also prayed for process and general relief.

Upon the filing of the amended petition in intervention on November 6, 1908, Aigler, through his attorneys, moved the court for an order setting aside and vacating the order of July 1, 1908, allowing the Steel Company to intervene and so much of the order made October 10, 1908, as gave the Steel Company leave to file an amended petition, and striking from the files the original and amended petitions in intervention. The court after argument on November 6, 1908, granted said motion, and struck both the amended and original petitions in intervention from the files of the court. The Steel Company on the same day appealed from said order to this court, and the appeal is No. 3,011 of this record. That there may be no confusion in regard to the record it may be stated that one Gibson was appointed receiver of the Construction Company in the Wollenburger suit on June 2, 1908, but was ordered by the court on August 7, 1908, to turn over the possession of the property in his hands to Ramsey, the receiver of the Railway Company, which was accordingly done.

On October 10, 1908, Dorset Carter, stated in the intervening petition of the Steel Company to have been the president of the Railway Company and general manager of the Construction Company, as agent of Ramsey, the receiver of the Railway Company, applied to the court for the issuance of receiver's certificates, and based his application on a petition verified by himself. It does not appear that any notice was given of this application to any one interested. It does appear, however, by an order of the court made on the same day that the Steel Company did not have sufficient notice thereof. The order of the court sustaining the demurrer of Aigler to the original petition in intervention contained the following:

"It is further ordered that leave be granted to said Illinois Steel Company to file its amended intervening petition within thirty days from this date. And said cause then coming on to be heard upon the petition of the receiver herein recommending the issuance of the receiver's certificates and it appearing to the court that said intervener, Illinois Steel Company, desires to file objections to said petition, and it further appearing to the court that said intervener has not had sufficient notice of said application to enable it to prepare such objections, and it appearing also that there is an immediate necessity of proceeding with the hearing of said cause upon motion of solicitors for said intervener, Illinois Steel Company, it is ordered that said intervener, Illinois Steel Company, be granted leave to file objections to the application of the receiver herein for the issuance of receiver's certificates within thirty days from this date; that said hearing be had as if said objections had already been filed, and that said objections when filed be filed nunc pro tunc as of October 10, 1908, and relate back to said date for all purposes."

The court, however, in face of the admitted fact of want of notice, on the petition alone of Carter and on the same day it was filed, made the following order:

"And it is further ordered, adjudged, and decreed that Asa E. Ramsey, as receiver herein, be and he is hereby authorized and directed forthwith to issue and negotiate for the best price obtainable not less than 85%, his receiver's certificates in the denomination of $1,000 bearing interest at the rate of 6% per annum, payable semi-annually, the certain installments for such to be evidenced by coupons in appropriate form, such certificates to mature three years after date, with the right, however, to the receiver to redeem the same at par, and accrued interest at any time after the sale of said Railway Company's property pursuant to a decree of this court upon giving 30 days' notice by publishing such notice once each week in some newspaper of general circulation in the state of Oklahoma and some newspaper of general circulation published in the state of New York in the principal sum of $100,000, the proceeds whereof

are to be used in the payment of such obligations as remain unpaid incurred by the receiver of the Canadian Valley Construction Company while in the management, control, and operation of said Railway Company or paying the unpaid obligations incurred by the receiver herein in the management, control, and operation of said railway; for defraying the expenses of repairing and ballasting of the roadbed of said Railway Company not exceeding $25,000; for building platforms and stockpens at convenient points along the right of way, not exceeding $4,000; for building piers for the support of and installing a steel bridge over the Washita river not exceeding $5,000; for paying notes of the said Railway Company held by the Pullman Company due upon the 1st days of June, July, August, September, and October, respectively, not exceeding $4,500; for paying George Ristine $210 for premium on insurance upon passenger equipment; for paying amount due Atchison, Topeka & Santa Fé Railway Company upon freight $4,007.85; for paying traffic balances to connecting carriers not exceeding $12,000; for paying terminal rental due Chicago, Rock Island & Pacific Railway Company $3,635.56. The balance of the proceeds of said $100,000 certificates, if any, after defraying the items hereinbefore provided for to be reported to this court, and to be held subject to the further direction of this court. Be it further ordered, adjudged, and decreed that the said Asa E. Ramsey, as receiver herein, be and he is hereby authorized and directed to issue his receiver's certificates of the same issue and upon the same terms in such amount as may be necessary to raise funds to pay such labor and salary claims, if any, incurred prior to June 2, 1908, as may hereafter be allowed as preferred claims against said Railway Company not to exceed $194,000 in addition to the amounts heretofore authorized; such last-named certificates not to be issued before such claims are allowed as preferred against said Railway Company. Be it further ordered, adjudged, and decreed that all of the receiver's certificates herein authorized to be sold shall be a portion of a total issue of receiver's certificates not to exceed $500,000, all of equal priority and lien, and that there shall remain in this court the right from time to time as in its judgment occasion may require to authorize and direct without notice to the holders of the certificates herein authorized, but upon due notice to all parties to this cause, further sales of the receiver's certificates, the total of which, however, with those herein authorized, shall not exceed $500,000, which shall all be a portion of a total issue of $500,000 all of equal priority and lien, and that such certificates now herein authorized or hereafter to be authorized portions of said $500,000 shall be first prior and paramount liens upon all and singular the property, real and personal, of the said Oklahoma Central Railway Company, including the right of way, cars, locomotives, engines, machine shops, station houses, tools, buildings, equipment, and appurtenances superior to the lien of the trust deed securing the bond of said Railway Company and superior to all and every other lien or incumbrance whatsoever, but without priority or preference of one certificate over another by reason of its prior issue or for any other reason."

From this order the Steel Company appealed, and the appeal is No. 2,988 of this record.

William D. McKenzie (K. K. Knapp, R. W. Campbell, D. M. Tibbetts, and Fred W. Green, on the brief), for appellant.

George C. Preston (Charles H. Hamill, Lessing Rosenthal, and J. H. Gordon, on the brief), for appellees.

Before SANBORN, Circuit Judge, and CARLAND and POLLOCK, District Judges.

CARLAND, District Judge (after stating the facts as above). These appeals have been submitted upon one record. We are met at the threshold of appeal No. 3,011 with the objection that the order of November 6, 1908, striking the petition in intervention of appellant from the files is not appealable. The reason for the objection is the

**rule** stated in Credits Commutation Company **v.** United States, 91 Fed. 573, 34 C. C. A. 14, as follows:

"When leave to intervene in an equity case is asked and refused, the rule so far as we are aware is well settled that the order thus made denying leave to intervene is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding. Such orders not only lack the finality which is necessary to support an appeal, but it is usually said of them that they cannot be reviewed because they merely involve an exercise of the discretionary powers of the trial court. Ex parte Cutting, 94 U. S. 14 [24 L. Ed. 49]; Hamlin v. Railroad Co., 78 Fed. 664 [24 C. C. A. 271, 36 L. R. A. 826]; Jones & Laughlins v. Sands, 79 Fed. 913 [25 C. C. A. 233]; In re Street, Petitioner, 62 Fed. 218 [10 C. C. A. 446]."

In this same case, however, the court also said:

"It is doubtless true that cases may arise where a denial of the right of a third party to intervene therein would be a practical denial of certain relief to which the intervener is fairly entitled and can only obtain by an intervention. Cases of this sort are those where there is a fund in court undergoing administration to which a third party asserts some right which will be lost in the event that he is not allowed to intervene before the fund is dissipated. In such cases an order denying leave to intervene is not discretionary with the chancellor, and will generally furnish the basis for an appeal since it finally disposes of the intervener's claim by denying him all right to relief."

The above language was approved by the Supreme Court in the same case on appeal. 177 U. S. 315, 20 Sup. Ct. 636, 44 L. Ed. 782. In the case at bar the trial court had taken possession of all of the property the Railway Company had. The Steel Company, if it were to have anything to say as to the disposition of said property, was obliged to intervene so that it could be heard in the protection of its rights. It could not go anywhere else. The bill filed by Aigler by its very terms was filed as much for the benefit of the Steel Company as Aigler. The Steel Company, however, is not obliged to rely upon the exception to the general rule above stated in order to sustain its right to appeal from the order which ousted it as intervener. The case presented is not one where a court has refused to permit a stranger to the record to intervene. The court did permit the Steel Company to intervene and consent that process issue on the petition in intervention to all parties not of record was given by Aigler the complainant. Aigler, and Ramsey, the receiver, demurred to the petition for want of equity and the court on argument sustained the demurrer of Aigler with leave to the Steel Company to amend its petition. By these proceedings the Steel Company became a party to the cause, and the court could not finally dispose of its rights as it attempted to do without the right of appeal. We now come to consider the merits of the order striking the amended intervening petition of the Steel Company from the files. We are not informed by the record as to the grounds upon which the trial court based its decision.

We have a right to infer, however, that the ruling of the court was based upon the grounds stated in the motion for the order and they were as follows: First, that the intervening petition did not show that the Steel Company had any lien upon the property of the Railway Company in the hands of the court; and, second, that said petition did not show that the Steel Company was in any wise interested in the ad-

ministration of the estate in the possession of the court. Manifestly neither one of these grounds were tenable. The Steel Company was the holder of bonds of the par value of $160,000 secured by a first mortgage on all the property in the hands of the court and it was interested in the estate as a creditor for materials furnished the Railway Company to construct the road in the sum of $129,124.64. What sort of logic is it which permits Aigler with a claim of less than $2,500 to invoke the action of the court, and denies the same privilege to the Steel Company? As was said by the Supreme Court in Louisville Trust Co. v. Louisville, etc., Ry., 174 U. S. 687, 19 Sup. Ct. 831 (43 L. Ed. 1130):

"The facts apparent on the face of the record were such as justified inquiry, and upon those facts, supported by the positive and verified allegations of the petitioner it was the duty of the trial court to have stayed proceedings and given time to produce evidence in support of the charges. Taking them as a whole they are very suggestive, independent of positive allegation; so suggestive, at least, that, when a distinct and verified charge of wrong was made, the court should have investigated it."

The Steel Company was entitled to intervene as a bondholder and as a general creditor, the proceeding being one to distribute all property of the Railway Company. Louisville Trust Co. v. Louisville, New Albany & Chicago R. R. Co., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130; Savings & Trust Company v. Baer Valley Irrigation Co. (C. C.) 93 Fed. 339; Farmers' Loan & Trust Co. v. San Diego Street Car Co. (C. C.) 45 Fed. 518; Continental Trust Co. v. Toledo, St. L. & K. C. R. R. Co. (C. C.) 82 Fed. 642; Campbell v. Railroad Co., 1 Woods, 368, Fed. Cas. No. 2,366; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559; Wallace v. Loomis, 97 U. S. 147, 24 L. Ed. 895; Williamson & Upton v. New Jersey Southern Ry. Co., 25 N. J. Eq. 13; Belmont Nail Co. v. Columbia Iron & Steel Co. (C. C.) 46 Fed. 336; Cook, Corporations, § 848e; Hamlin v. Toledo, St. L. & K. C. R. R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826. The right to object to the mere right of the Steel Company to intervene, at the time the order was made had been waived by Aigler by consenting to the issuance of process and in demurring to the petition. Hamlin v. Toledo, St. L. & K. C. R. R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826; French v. Gapen, 105 U. S. 509, 26 L. Ed. 951; Perry v. Godbe (C. C.) 82 Fed. 141; Weinberg v. Noonan, 193 Ill. 165, 61 N. E. 1022; Cyc. vol. 16, p. 203; Encyclopedia of Pleading and Practice, vol. 14, p. 102. Having obtained jurisdiction by the appeal from the order of November 6, 1908, ousting the Steel Company from the case, we may review the order of October 10, 1908, authorizing the issuance of receiver's certificates whether the latter order is appealable or not. There is, however, persuasive authority that this latter order is appealable. Farmers' Loan & Trust Company, Petitioner, 129 U. S. 206, 9 Sup. Ct. 265, 32 L. Ed. 656; Bibber-White Company v. White River Val. Electric R. Co., 115 Fed. 786, 788, 53 C. C. A. 282, 284. It was said by the Supreme Court in Wallace v. Loomis, 97 U. S. 162 (24 L. Ed. 895) as follows:

"The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment

of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment cannot at this day be seriously disputed. It is a part of that jurisdiction always exercised by the court by which it is its duty to protect the trust funds in its hands. It is undoubtedly a power to be exercised with great caution; and if possible with the consent or acquiescence of the parties interested in the fund."

To this rule there is no exception. High on Receivers, page 407; Union Trust Company v. Illinois Midland Railway Co., 117 U. S. 455, 6 Sup. Ct. 809, 29 L. Ed. 963; American and English Encyclopedia of Law, vol. 24, p. 39; Alderson on Receivers, page 457. Where there is objection made to the issuance of receiver's certificates they should not be issued on the unsupported petition of the receiver. Alderson on Receivers, 453, 455; Meyer v. Johnston, 53 Ala. 237. The trial court did not even have the official responsibility of its receiver to rely upon when it made the order authorizing the issuance of receiver's certificates, but only the statement of the agent of the receiver, and that agent a person so related to the affairs of the Railway Company as to at once suggest to the court careful consideration of his petition.

When a court of equity takes possession of railroad property through its receiver for the benefit of all having an interest therein, its honor and integrity is pledged as a guaranty that so far as the court can control the matter everything will be done to conserve and protect that property. It is because of this responsibility and obligation that in proper cases the court may authorize its receiver to issue certificates for the purpose of raising money where the income of the road is insufficient for the proper conservation of the same pending the litigation. The power to authorize the issuance of certificates is limited by, and is coextensive with, its obligation to conserve the property in its custody, and any expenditure of money that has not this primary purpose for its object is beyond the power of the court and unauthorized. To create an indebtedness which shall have priority over the claims of all persons interested in the property taken possession of by the court is a serious matter. Take the present case for illustration: Aigler obtains a judgment of less than $2,500 in amount against the Railway Company. He has a receiver appointed, and the receiver is authorized to issue and sell certificates to the amount of nearly $200,000, which shall be considered a part of a total issue of $500,000, and this is done within a little over four months from the date when the court took possession of a railroad 130 miles in length. The order of October 10, 1908, executed according to its terms would be confiscation, not conservation. In the case of Farmers' Loan & Trust Co. v. Oregon Pacific R. R. Co., 31 Or. 237, 48 Pac. 706, 38 L. R. A. 424, 65 Am. St. Rep. 822, the Supreme Court of Oregon in speaking of a railroad receivership used the following language:

"And if at any time after the appointment has been made it become apparent to the court that it will be unable to pay and discharge the present or future liabilities incurred by its executive officer and manager, it should refuse to continue the operation of the road under the receiver unless its expenses are guaranteed. No court is bound or ought to engage or continue in the operation of a railroad or any other enterprise without the ability to promptly discharge its

obligations, and unless it can do so it should keep out, or immediately go out of the business."

The above language was approved by the Supreme Court in Atlantic Trust Co. v. Chapman, 208 U. S. 360, 28. Sup. Ct. 406, 52 L. Ed. 528. We do not say that the receiver in the present case ought not to be authorized to issue any certificates. No court ought to determine that question simply on the showing made by Dorset Carter, the receiver's agent. There should be a full and fair hearing on the petition presented after due notice to all persons interested, and then, guided by the principles declared in the cases cited, the court should limit the amount of certificates if any are issued, to that sum which would be necessary to conserve the estate in its hands. Manifestly, the issuance of certificates to the amount of $94,000 to raise money to pay labor and salary claims, if any, incurred prior to June 2, 1908, was wholly unauthorized. Our conclusion on this branch of the case is that the order of October 10, 1908, was made without sufficient notice to those interested, and that the court did not have that particular and reliable information before it which was necessary in such a serious matter.

The judgment of this court will be that the order of November 6, 1908, and of October 10, 1908, be reversed and the case remanded to the United States Circuit Court for the Eastern District of Oklahoma, with instructions to proceed in due course upon the intervening petition of the Steel Company, and after due notice to all persons or parties interested to investigate the matters stated in the petition of the receiver for the issuance of receiver's certificates, and proceed thereon as law and justice may require, and in conformity with the views herein expressed.