## RHEINBERGER v. SECURITY LIFE INS. CO. OF AMERICA.

### No. 11683.

District Court, N. D. Illinois, E. D.

Oct. 25, 1933.

Joseph McCormack (Peabody, Westbrook, Watson & Stephenson), and Spencer, Bryan & O'Callaghan, all of Chicago, Ill., for petitioners.

Bull, Lytton & Olson, of Chicago, Ill., for receiver.

Stebbins, L'Amoreaux & Hurtubise, of Chicago, Ill., for Central Life Ins. Co. of Illinois.

LINDLEY, District Judge.

Petitioners, claiming to be the owners of paid-up policies in the Security Life Insurance Company of America, have filed their motion for leave to intervene and to file a petition of intervention. The end sought is the vacation of an order of this court approving certain amendments to the contract of reinsurance hereinafter mentioned.

A receiver was appointed herein for the Security Life Insurance Company of America (hereinafter termed the Security) on April 18, 1932. The first action of the court and its receiver was to determine whether or not there was any possibility of reorganization of the company beneficial to the parties in interest. After careful investigation and full consideration of this matter, it became evident that no such possibility existed. The reserves were so impaired and depleted that under then existing industrial and financial conditions of the country, the additional capital necessary to any such reorganization could not be procured.

Realizing that the condition of the estate was such that the only parties in interest who could derive any benefit from the court's administration were the policyholders and that delay in attempting to make provision for protection of such beneficiaries might produce irreparable damage to them, the court immediately directed that proposed contracts of reinsurance be solicited. After thorough advertisement in approved channels, various contracts were tendered to the receiver. These were submitted to actuaries, not only of the Security but also of one of the well-known companies of the United States who was not a bidder, blindly, without the names of the respective bidders being disclosed. The tendered contracts were submitted in the same form to the court and to counsel for the receiver. After analysis of the various proposals had been made by counsel, and the reports of the actuaries upon the same re-

ceived and considered, the court directed the acceptance of that bid which as a result of the investigation it was apparent was for the best interest of the policyholders. Such bid proved to be that of the Central Life Insurance Company of Illinois (hereinafter termed the Central). The original proposals, however, were none of them in form satisfactory to the court and supplements thereto were directed to be and were filed.

Under the law of Illinois, insurance companies are subject to regulation by the insurance departmental officers (heretofore in the department of trade and commerce) and contracts of reinsurance must be approved thereby. The contract was submitted to the state authorities shortly after its approval by this court on August 15, 1932, and the matter was pending with them until on November 14, 1932, after the amendments, now in question, were authorized by the court, the department approved the contract as amended. Whether the department requested the amendments to the contract or whether the request originated with the insurance company is immaterial. The fact is that not until the so-called clarifying amendments had been approved by the court and filed with the department was final approval given by the state authorities. Until that time the contract was not effective inasmuch as it had not been approved by the state of Illinois, and the reinsurer had no right to proceed with the performance thereof.

The original contract contemplated that there might be occasion for amendments thereto, and accordingly contained provision therefor. Some time after the original contract had been approved and before final approval by the state authorities, the Central filed with the court its petition for leave to amend the contract, wherein it was represented that the original contract had been filed with the state authorities and tentatively but not finally approved, and that in the interest of clarity, and to avoid all ambiguity and uncertainty in the first paragraph, it was necessary that certain clarifying amendments be adopted. As authorized by the court and submitted to the state authorities in the original draft, the parts of paragraph first material in the present situation were as follows:

"Central agrees to and does hereby reinsure and assume all policies of insurance of the Security in force on April 18, 1932, including all annuity and/or supplementary contracts and all policies reinsured by it and extended term and paid up insurance in force by their terms on said date, and (except as herein provided) to carry out all the provisions and agreements contained in said policies subject to any and all defenses against claims under or actions upon said policies which Security rightfully might have asserted had this contract not been made and subject to the lien hereinafter specified. * * * "

"As part of the consideration moving the Central to execute this contract and to assume the liabilities herein assumed there is hereby established and placed against each policy and contract reinsured and assumed by Central hereunder a lien equal to the full legal reserve thereof (including dividend and coupon additions and accumulations and an adequate reserve for disability and double indemnity benefits, if any) as such reserve has been or under the laws of the State of Illinois should have been established and carried by the Security on the 18th day of April, 1932. The amount of such lien shall bear interest at the rate of 5 % per annum, compounded annually, both the lien as reduced from time to time as hereinafter provided and the interest thereon (which interest shall be a part of said lien) to be deducted from any payment made by Central pursuant to the terms of said policies and from any settlement made thereunder and from the values used to establish any paid up on extended insurance on any policy of the Security as of April 18, 1932, or thereafter, and from any loan thereon and from any other disbursement required by the terms of said policies, if any, except as otherwise hereinafter expressly provided. * * * "

It was suggested to the court that an ambiguity arose upon the face of the contract with regard to paid-up policies. The court at that time again examined the original contract and after examination announced that in its opinion there was no ambiguity in the original contract; that it was the intention of the court that all policyholders should share pro rata in the liquidation of the assets of the Security and that it was not the intention of the court that paid-up policyholders should be paid in full, whereas present premium paying policies should receive only pro rata share of the remaining assets, and that in the opinion of the court the proper construction of the original contract was to the effect that there was a lien imposed against all paid-up policies to the extent of their share in the reserve of the company, and that any reinsurance thereof by the Central would mean that the latter company would receive from the trustees the pro rata shares of the liquidating assets of the Security to be applied against the liens upon the paid-

up policies thus reinsured. In other words, the court never contemplated that there should be an advantage to paid-up policies over other policies. They were no longer capable of growth, but were for fixed amounts, matured in character, liquidated liabilities.

For these reasons the court believed that the amendments were not necessary, but at the insistence of the parties, upon their contention that though they agreed with the court, the amendments would achieve no different result but would clarify the meaning, an order was entered authorizing certain amendments by virtue of which the portion of the second paragraph above quoted beginning with the word "as" and ending with the word "provided" was altered. The first part of paragraph first, set forth above, was altered to read as follows: "Central agrees to and does hereby reinsure and assume all policies of insurance of the Security in force on April 18, 1932, including all annuity and/or supplementary contracts and all policies reinsured by it in force by their terms on said date (except extended term and paid up insurance and all claims under or in connection with same which shall be handled and/or paid by Central from proceeds of liquidation as directed by the Trustees hereinafter mentioned in a like manner as provided in Paragraph Ninth hereof with respect to policy claims and rights not specifically mentioned therein) and, except as herein otherwise provided, to carry out all the provisions and agreements contained in said policies, subject to any and all defenses against claims under or actions upon said policies which Security rightfully might have asserted had this contract not been made and subject to the lien hereinafter specified."

Furthermore, a portion of paragraph eighth in the original contract, as follows: "In the event of the death of an assured on or after April 18, 1932, and while his or her policy is in force, Central shall waive said lien or any balance thereof then remaining, upon the relinquishment by the beneficiaries of any claims to future proceeds of liquidation and the waiving of all claims against the Trustees, the Receiver, Security and Central," was replaced with an amended paragraph reading as follows: "In the event of the death of an assured on or after April 18, 1932, and while his or her policy is in force on a premium paying basis, Central shall waive said lien (but no accrued interest thereon) or any balance thereof then remaining, upon the relinquishment by the beneficiaries of any claims to future proceeds of liquidation and the waiving of all claims against the Trustees, the Receiver, Security and Central."

These amendments were then submitted to the state authorities, and on November 14, 1932, the contract as amended was approved by the state department and for the first time became a binding and effective contract of reinsurance under the law of the state of Illinois. Not until this approval was had could the Central proceed and then only did the rights and liabilities of the parties become finally fixed.

■ It is now contended by the petitioners that they should be allowed to intervene for the purpose of attacking the said order of the court. The rule is that when parties are permitted to intervene in a suit they are so permitted, not for the purpose of disturbing an order that has previously been made, but in subordination thereto and for the purpose of securing relief in the future. Consequently they are estopped from attacking any previous order of the court. Thus in North American Company v. St. Louis & San Fran. Ry. Co. (D. C.) 288 F. 612, at page 627, Judge Sanborn said: "It is the established and general rule that those who intervene in a suit in equity on their own applications enter subject to and are thenceforth bound and estopped by all the previous orders, decrees, and acts of the court in the suit to the same extent as they would have been if they had been parties to the suit when those orders, decrees, and acts were respectively made, and under this rule the interveners are conclusively estopped from avoiding, disregarding or assailing the decrees, the sale, the estoppels thereof, or the title to the property in the purchaser." The Supreme Court of the United States, in U. S. v. California Co-op. Canneries, 279 U. S. 553, 49 S. Ct. 423, 73 L. Ed. 838, referred to the "settled rule of practice that intervention will not be allowed for the purpose of impeaching a decree, already entered." See, also, Commercial Elec. Sup. Co. v. Curtis (C. C. A.) 288 F. 657, and Swift v. Black Panther Oil & Gas Co. (C. C. A.) 244 F. 20. Consequently, if the parties were permitted to intervene, the purpose of such intervention would necessarily be denied them (in view of the rule cited), for they can have no relief from the situation they complain of except by vacation of the order by the court heretofore entered.

■ But the court deems it necessary to consider this matter further even though petitioners have no right to intervene for the

purpose they assert, for the reason that if it is complained that there has been fraud or deceit upon the court, it is the duty of the chancellor of his own motion to make inquiry of the same and prevent effectuation thereof. Consequently, I deem it necessary to consider the exact situation in this cause and determine whether or not there has been any fraud or deceit upon the court.

The quotations from the original contract and amendments thereto as hereinbefore set forth indicate that under the original contract the situation as to paid-up insurance was that the Central agreed to assume paid-up insurance in force by its terms on April 18, 1932, and contracted, as provided in the contract, to carry out the provision of such policies, subject, however, to the policy lien provided to take care of the deficiency in the depleted reserves. Because of such impairment, such lien was as of the date the receiver was appointed equal to the full amount of the reserve, and the contract provided that both the lien and the interest should be deducted from the values used to establish any paid-up insurance on any policy of the Security as of April 18, 1932, or thereafter. Consequently the entire reserve was as of said date, if the contract became effective, covered by a lien and no policyholder had any right then existing except his pro rata share of such depleted reserve.

The effect of such a situation upon a paid-up policy is somewhat different from that upon a policy being carried upon a premium paying basis, for on paid-up insurance there are no longer any premiums being paid, and it has nothing of potential character to increase its future value. A premium paying policy, however, is not a static thing, but a live, kinetic interest increasing in accordance with the wisdom of the management of the reinsuring company. Nothing that the reinsurer may do will increase the fixed value of a paid-up policy. Everything that it does affects the future value of continued premium paying policies. Consequently, if a reinsurer should agree to pay a paid-up policy in full, though it is to receive only a small percentage thereof in reimbursement from depleted reserves, it would be making a pure gift, and perhaps contracting to do something without legal consideration. Such situation the court did not contemplate and such situation the court did not then believe and does not now believe the original contract contemplated.

If there were any indefiniteness about this interpretation of the original contract, it was probably increased by the language of paragraph eighth. Therein it was agreed that with reference to a death occurring on or after April 18, 1932, and while the policy was in force, the Central would waive the lien. If, by reason of the situation arising from paragraph first, a paid-up policy could not be considered in force, then the provision of paragraph eighth, providing for a waiver of lien in case of death, would not be operative with respect thereto. The language simply increased the ambiguity. The court's feeling was that as to paid-up insurance the waiver provided by paragraph eighth could not operate as a waiver of the lien provided in paragraph first, the deduction of which from the reserve prevented such paid-up insurance from being in force or existence. Therefore, to avoid any misunderstanding in the premises, paragraph eighth was amended to read so as to apply only to contracts upon a premium paying basis. The court believed at that time that the amendments to the contract added nothing thereto, modified the same in no way, but merely made more clear to all parties what had been the intent of the original contract. The court believed then and believes now that the proportionate interests of paid-up policyholders under the amendments are exactly the same as they were under the original contract, except perhaps that the intent is clarified and the situation of paid-up policyholders thus improved somewhat.

The only protection afforded policyholders by the reinsurer is paid for directly or indirectly from the proceeds of sale of the insolvent company's assets except as the policy may grow in the future. The amendments clearly recognized the unfortunate situation of holders of paid-up policies in an insolvent insurance company, which have no possible future growth. They recognized that the lien created covered the entire reserve, and thereby eliminated the only basis for protection of paid-up insurance, and left to such policyholders only that which the law could give them, a pro rata share of the proceeds of liquidation of the reserves. Consequently, the amendments provided that the Central should pay all claims upon paid-up insurance from the proceeds of liquidation of the Security, as accomplished by the trustees named by the court. In this manner the court authorized the trustees to endeavor to work out some method whereby the interest of the paid-up policyholders in the proceeds of liquidation might be utilized to obtain or keep reinsurance.

To construe the original contract in any other manner than that which the court has

indicated proper would be to place the other participants in the liquidation of the assets of the Security at a disadvantage. In other words, if the original contract can be construed to place upon the Central an absolute contract to pay all paid-up policy liabilities, other provisions of the same contract put upon other policyholders the eventual cost of such reimbursement by the Central. Paragraph eighth of the contract provides for the payment of death claims and the waiver of liens, but in addition it contains a provision that the total amount so paid on or in connection with such death claims, including liens with interest at the rate of 5 per cent. per annum, shall be deducted from the proceeds of liquidation. It is provided that all disbursements made by the reinsurer under this paragraph shall be "a first and prior lien on all assets in the hands of the trustees until such disbursements are repaid by the trustees" as elsewhere provided in the contract. The inevitable result of these provisions is that every dollar paid to the holder of paid-up policies in excess of their equitable share of their impaired reserve could come only from the other policyholders. In other words, if death claims are to be paid in full and the reinsurer is to be reimbursed from the depleted reserve, such reserve will afford just so much less a return to the other policyholders. Under no condition should a court of equity allow preference in distribution of proceeds of liquidation amongst unsecured creditors. To create and recognize a preferred special class of such unsecured creditors is not equity.

Some contention is made that the amendments were sought by the reinsurer to avoid its obligations. If under the original contract the latter assumed full liability for paid-up policies, then under paragraph eighth it was entitled to reimbursement for all such payment out of reserves of the Security. Consequently it stood no chance to lose unless the whole of the depleted reserve was insufficient to pay the comparatively small number of paid-up policy demands. The amendments, therefore, did not benefit the reinsurer.

Considerable is said concerning collusion between state authorities and the Central. Nothing submitted to the court indicates in the slightest degree any such collusion and the court is not interested in that question. It is of little moment whether the Central requested the amendments originally or whether the ideas originated with the insurance company or whether they originated with the receiver. The sole question which the court had to consider was whether it was worth while to make more explicit the intent and meaning which the court placed upon the original contract. In the interest of clearness it was desirable to make it impossible for there to be any question as to the right of all policyholders to share equitably and pro rata in the depleted assets. Therefore, the court permitted the amendments, and such amendments having been made prior to the final approval by the state authorities, the contract, in its final form, was not effective until the amendments had been approved.

The amendments complained of injured in no way the petitioners' rights. They were the same after the amendments as they were before, namely, the right to participate with the other creditors on an equitable basis in all the assets of the defunct company. This court could give them nothing more then and can give them nothing more now. To allow them to intervene at the present time, therefore, in an attempt to accomplish more, would be a futile gesture. Furthermore, as we have seen, the petitions for leave to intervene attack something which the court has previously fully considered and which is not now open to attack by subsequent interveners.

Accordingly, the motion will be denied.